## Estate of John P. Wilkinson, deceased. Appeal of David J. Chambers.

*Decedents' estates—Will—Money—Legacy.*

Where a testator in his lifetime was dependent for a livelihood on the income from investments, and the general intention of his will is to make such disposition of his estate as to enable his wife to continue in the same home, and live in the same way that he and she had lived in his lifetime, the words of the will are to be interpreted in the light of this general intention, and under a bequest to the wife, of " all money in the house and bank or on hand at the time of my death," she would be entitled to all specific sums of money which testator had at the time of his death, attainable for his immediate use in case of need.

*Decedents' estates—Will—Money in bank—Individual and partnership bank accounts.*

Testator, a man of considerable property, who had been living for some years on the income of his investments, gave his wife by will an undivided one-half interest in his real estate, " together with the household and kitchen furniture including contents of the cellar, all provisions and all articles belonging to me in the house, my horse, two carriages, all my harness, cutter, stable furniture, hay, feed, feed chests, cutting box, chickens, all money in the house and bank or on hand at the time of my death." At the time of his death he had $30.00 in the house, and an individual credit in the bank of $336.54. As surviving partner he had settled the business of a partnership, and, at the time of his death, there was a

credit in the firm name of $7,497.47. On a settlement made after his death it was determined that he was entitled to $4,556.07 of this fund. *Held*, (1) that no part of the partnership fund belonged to testator in his individual capacity ; (2) that the legacy gave the wife only his individual credit in bank and the money in the house.

Argued Feb. 7, 1899. Appeal, No. 357, Jan. T., 1898, by David J. Chambers, from decree of O. C. Chester Co., dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The auditor's report so far as it relates to the present appeal is as follows :

The decedent, John P. Wilkinson, and his brother Samuel Wilkinson, composed the firm of John P. Wilkinson & Brother, doing business at Unionville, Chester county, Pennsylvania, for over twenty years prior to Samuel Wilkinson's death, in carrying on a tannery. Samuel Wilkinson died January 14, 1893. John P. Wilkinson died July 22, 1896. His widow, Hannah A. Wilkinson, died November 9, 1896. On January 1, 1892, the firm of John P. Wilkinson & Brother leased their tannery at Unionville, to Edgar A. Wilkinson and Charles F. Cutler. All the business of the firm from that time done at the tannery by said firm was to work up the raw stock, and dispose of the material on hand. Several months were occupied in this work. While thus engaged in business, the firm to a large extent invested their surplus money in western mortgages and to some extent in Reading Railroad stock, in the name of John P. Wilkinson & Brother. They also had an interest in real estate at Jennerville, Chatham and Unionville, the title to which was in their individual names, but had been paid for with the firm funds and was carried on their books as firm assets. Each kept separate bank accounts and had separate bank boxes. They also kept a firm bank account in the name of John P. Wilkinson & Brother, and also had a firm bank box, in which the firm securities were kept. At the death of Samuel Wilkinson, there was about $7,000 to $8,000 worth of leather on hand belonging to the firm, and securities standing in the name of the firm for the face value of about $20,000, which

had been paid for with firm funds. After Samuel Wilkinson's death, John P. Wilkinson took charge of all the firm assets, including securities and railroad stock standing in the firm name, disposed in part of the firm assets and discharged the firm liabilities, and, prior to his death, had paid all the firm debts owing when Samuel died, so that at the death of John P. Wilkinson, there were no liabilities of the firm outstanding, except the current expenses of carrying the joint property; the remaining assets of the firm were in part in western mortgages, Philadelphia & Reading Railroad stock and cash in bank to the credit of John P. Wilkinson & Brother. This account in bank was continued on after Samuel Wilkinson's death to John P. Wilkinson's death, as it had been before. At the death of John P. Wilkinson, the amount standing to the credit of John P. Wilkinson & Brother in the First National Bank of West Chester, where all these accounts and securities were kept, was $7,497.47, which sum the accountant in this account has charged herself with. The balance of this firm account to the credit of the firm, at the time of Samuel Wilkinson's death was about $687.87. The deposits in this firm account since January 1, 1894, to the death of John P. Wilkinson, consists exclusively of coupons on western mortgages and western securities collected, and the credits since the same date are made up of taxes and repairs on joint real estate, insurance on the same, foreclosure costs, assessments on the Reading Railroad stock and payments to the executors of Samuel Wilkinson on account of his interest in the securities collected. At the date of John P. Wilkinson's will, February 8, 1894, the balance to the credit of the firm account in the bank was about $350. On October 1, 1894, it was $398. On July 12, 1895, it was $1,496.49. On August 19, 1895, it was increased by the Alexander mortgage collected, $850. On January 13, 1896, by another firm investment collected, $4,280. And on June 20, 1896, by another collection of like character, $925. On February 22, 1894, John P. Wilkinson paid said executors $1,500. On August 9, 1894, $1,800, and on January 16, 1895, $1,000. After the death of John P. Wilkinson, the legal representatives of the estate of Samuel Wilkinson spent considerable time in going over the account between John P. Wilkinson and Samuel Wilkinson, taking into account all the moneys received by John

since the death of Samuel, as well as all the moneys paid by John to Samuel Wilkinson's executors, and arrived at a conclusion which was satisfactory to the representatives of both estates, that John P. Wilkinson's estate was entitled to credit as against Samuel Wilkinson upon the joint account of $1,614.68. All the other joint and firm property had been disposed of prior to John's death, except the securities standing in the firm name of John P. Wilkinson & Brother, which were not collected, and the above bank balance.  This settlement fixed the respective interests of the partners in this cash balance as follows :

| | | |
|---|---:|---:|
| The balance in bank at time of John's death as above stated, was | $7,497 | 47 |
| Add the amount due by Samuel's estate, to the firm as above agreed upon, | 1,614 | 68 |
| Makes a total of | $9,112 | 15 |
| One half of which, or | 4,556 | 07 |
| would represent John P. Wilkinson's interest in the cash in bank, standing to the firm's credit. | | |
| Deduct from this sum the amount Samuel owed, namely | 1,614 | 68 |
| Would leave the amount of Samuel's share of cash in bank, | $2,941 | 39 |
| The balance in bank to the credit of individual account to John P. Wilkinson, at the time of this death, was | 336 | 54 |
| And there was in the house at the time of his death | 30 | 00 |

These last two sums were received by Hannah A. Wilkinson under the bequest to her.

John P. Wilkinson made his will dated February 8, 1894, and by said will in item No. 2, devised to his widow, Hannah A. Wilkinson, his undivided one-half interest in all the real estate in Unionville he owned, " together with the household and kitchen furniture, clothing, contents of the cellar, and all provisions and all articles belonging to me in the house, my horse, two carriages, all my harness, cutter, stable furniture, hay, feed, feed chest, cutting box, chickens, all money in the house and bank or on hand at the time of my death."  Under this clause of the will, Mr. Pierce claims that the above sum of $4,556.07 belongs to the estate of Hannah A. Wilkinson.  The balance of said fund in bank, as above ascertained, belongs to the estate of Samuel Wilkinson, and it is agreed that it shall be so awarded. . . . . Did John P. Wilkinson's share of this deposit, in the First National Bank of West Chester to the credit of John P. Wilkinson & Brother, pass to his widow, Hannah A. Wilkinson, under

the bequest contained in his will, of " all moneys in bank or on hand at the time of my death." Strictly speaking, the balance to the credit of a depositor in bank is not " money." It is a chose in action, a liability of the bank to the depositor. Where it is clear from the will that the intention of the testator was to pass a deposit in bank by the term " money," that term has been held to cover such deposit. Where a testator gives to one person " all his moneys on hand," and to another, " all his money out on securities," the balance at his banker's will pass as " money on hand : " Varsey v. Reynolds, 5 Russell, 12. A legacy of " all money on hand or in bank at the time of my decease " will pass money in the hands of an agent : Copias's Estate, 5 Philadelphia, 214.

Under a bequest of " all moneys " that the testator should die possessed of, the legatee is entitled to the cash—using the term in a popular sense—which at the time of his death, the testator had in his possession or deposited in bank : Beck v. McGillis, 9 Barber, 59. The term " money " in a will may be construed to mean cash, or may stand for the whole of the personal estate, and it is to be received in one or the other sense as will best effectuate the general intention of the testator deduced from every part of his will : Smith v. Davis, 1 Grant, 158 ; Carr's Estate, 13 Pa. C. C. R. 643. And it has been even held to include real estate : Jacob's Estate, 140 Pa. 268.

It is admitted, and properly so, that the moneys John P. Wilkinson had on deposit in the First National Bank of West Chester to his individual credit, at the time of his decease, passed to his widow under this clause of his will. The testator used the word " money " twice in his will, namely, in the clause under consideration and also in the seventh item of his will, disposing of his residuary estate. The seventh item of his will is as follows : " I direct my executor to pay all moneys not herein disposed of to in——trust nevertheless for the benefit of my wife for life," and then to legatees specifically named. In this clause he undoubtedly used the term " money " to include all his personal property not otherwise disposed of, and the proceeds of his real estate directed to be sold. It might be assumed fairly that the same meaning should be given to the word in both clauses ; but when item No. 2, in which the term " money " is first used is examined, it is evident that he did not give the

same meaning to the term in the second item as he has in the seventh item of his will. For, in the second item he specifically mentions all the other property in the house, and the use of the word "money" in this clause occurs in one of these specifications. If he had meant by the use of the word "money" in the second item all his property in the house, it would not be necessary to specify his other property therein, nor is it likely he would do so. The use of the word in different meanings in the same instrument shows that he did not employ the term "money" in any strict sense of its meaning. It is probable that in drafting the residuary clause, he looked upon and contemplated his whole estate as turned into money and disposed of it in that form. By the will, he first gave to his wife, "for a home," all his interest in the real estate where he resided, together with all the personal estate therein and used in connection therewith. He then authorizes his executrix, his widow, to sell and rent all his real estate not specifically disposed of, and after giving two pecuniary bequests aggregating $550, and bequeathing his watch and chain, he gave all the residue of his estate under the term "money" for the use of his wife for life, and at her death he gave the same to the collateral heirs therein named. He had no children. He was a man of considerable property. He had not been in active business for several years and was living on the income of his investments and property. The general intention of his will, so far as his wife is concerned, seems to have been to make such a disposition of his estate that his wife should be enabled to continue keeping up the same home and to live in the same way as they had been living in his lifetime. He not only gives her the real estate which had been their home for years, but also directs that she should have everything needful to make that home comfortable, and to carry the same on, and to live in the same way as they had been living during his lifetime. To accomplish this, he seeks to place her in the same situation as to his property as he was. She was not only to have the real estate for her home, but everything in the way of personal property about it, just as it was when he died, namely, "the household and kitchen furniture, including the contents of the cellar, all provisions, and all articles belonging to me in the house, my horse, two carriages, all my harness, cutter, stable furniture, hay, feed, feed chest, cutting box, chick-

ens, all money in the house and bank or on hand, at the time of
my death." In addition thereto, she was to have the income
of nearly all the balance of his estate. As he had been depend-
ent on the income from his investments for a livelihood, so she
was to have and enjoy the same after his decease. This being
the clear intention as gathered from the will, the words of the
will under consideration are to be interpreted in the light of
this general intention, and she would be entitled under the term
"money" to all specific sums of money he had at the time of
his death available for his immediate use, in case of need. All
such items coming under the general description of money
which he had on hand to be used in the payment of the current
expenses of his household, and which he could immediately
command, would pass by this bequest. Prudent men keep on
hand, or in bank, or about them, a reasonable sum of money to
meet all ordinary and usual expenses of living, and it was the
evident intention of Mr. Wilkinson by his will, that his wife
should at his death, take for her own use, all such funds he
then had on hand. He had at the time of his death in cash
in the house $30.00, and in the bank to his individual credit
$336.54, for the purposes indicated, and such moneys he undoubt-
edly meant his wife should get at once and absolutely upon his
decease. An examination of John P. Wilkinson's individual
bank account, for several years prior to his decease, shows that
it was made up of dividends collected, coupons and cash depos-
ited, and the checks were for personal expenses, and that the
balance he had on hand for several years averaged about $400.
These moneys undoubtedly passed by the will to the widow
under the clause in question. The account kept in the name
of the firm was never drawn upon by John P. Wilkinson for
his personal expenses or in any way used for his individual trans-
actions except to purchase investments. In lieu of the cash he
paid over from time to time to the executors of Samuel Wilkin-
son, he took with their approval investments belonging to the
firm and standing in the firm name. This bank account was
kept in the name of the firm and by the surviving partner, and
was made up exclusively of firm assets and transactions. It
was treated as firm assets by John P. Wilkinson. He never
drew upon it for his individual use. No settlement of the part-
nership affairs had been made before his death. As the surviv-

ing and liquidating partner, he was the trustee for all concerned in the partnership and was accountable as such: Parsons on Partnership, p. 441.

This fund was a trust fund and consisted exclusively of firm assets and was firm assets until a settlement was made between the partners or their representatives. Neither partner had any right to any part of the fund. At the death of John P. Wilkinson, the only legal way to close up the partnership would have been the appointment of a receiver, who would have been entitled to take this trust fund as part of the partnership assets and hold the same until the respective rights of the partners therein, as well as in other assets, were adjudicated. The estate of Samuel Wilkinson could not compel payment to them of any part of this fund until an account was stated or settlement made of the firm affairs. The fund was not the individual property of the partners, and if it had not been for the settlement of the relations of the partners to this fund immediately after John's death, by the representatives of both parties, this fund could not have been paid to the bank by any one except a receiver of the firm. So that this balance to the firm account in bank was of such a character that it was not " money in bank or on hand " of John P. Wilkinson at his death. In the judgment of the auditor, for the reasons given, the widow is not entitled to this fund under the terms of the will.

*Error assigned* was in dismissing exceptions to auditor's report.

*Thomas W. Pierce*, for appellant.—It is apparent from the will that testator intended his wife to be the chief object of his bounty.

To the testator, these moneys deposited in the account of John P. Wilkinson & Brother, being the interest and principal collected from his investments, although made in common with his brother, so far as his half interest in them was concerned, were money on hand, and would be naturally so regarded by him. That account contained the larger part of his moneys from time to time. In it went all the proceeds of the obligations held in common between him and his brother, interest and principal, when collected.

The money thus deposited in bank was, under the authorities, money on hand; it was, to the extent of $4,556.07, determined by the auditor to belong to John P. Wilkinson, and it is in this account for distribution.

It was held that the balances at the testator's bankers, although by the practice of the banker such balances bore interest if they remained for a certain period, balances in the hands of an agent, and dividends due on stock which the testator might have received on applying for them passed to the wife under the bequest: Fryer v. Rankin, 11 Simons, 55; Vaisey v. Reynolds, 5 Russell, 12.

In Copias's Estate, 3 Phila. 214, cited by the auditor in his report, money on hand or in bank was held to pass money in the hands of the agent.

*Wm. M. Hayes* and *J. Carroll Hayes*, for appellee.—The word money does not extend beyond what is literally money, unless the context requires it: Levy's Est., 161 Pa. 194; Widener v. Beggs, 118 Pa. 374; Sweet v. Burnett, 136 N. Y. 204.

It is clear that if the word (money) be used without any explanatory context, it will be construed in its strict sense: 2 Jarman on Wills (5th Am. ed.), 374; 2 Williams on Executors (7th Am. ed.), 475, and note *q*.

Prima facie, and in the absence of anything in the will to indicate a different intention, the word "moneys" will be confined to ready money actually in hand: Langdale v. Whitfield, 4 K. & J. 426; Vice Chancellor Wood, in Low v. Thomas, Kay, 376; Larner v. Larner, 3 Drewry, 707.

John P. Wilkinson had no right, even had he so chosen, to settle the books of the firm alone and to draw from the partnership fund in bank what, upon such settlement, he considered to be due him individually. Such action on his part would not, without the concurrence of the other partner's representatives, have bound the latter: Andrews v. Allen, 9 S. & R. 241; Ferguson v. Wright, 61 Pa. 261.

That the testator's interest in this partnership fund was a mere chose in action cannot, as we have seen, be controverted. And the authorities, both in this country and England, hold that without something in the context requiring it, a bequest of "money" will not pass a chose in action of any kind: Mann v. Mann, 1 Johns. Ch. (N. Y.) 231; affirmed in 14 Johns. 1.

A bequest of " all my personal property in A., excepting securities of every kind," does not include profits in a partnership business. That is a chose in action, not tangible property: Sloan's Appeal, 2 Del. Co. 484.

A legacy due from another testator's estate does not pass by a bequest of "money and securities for money," "because it was only a debt: " In re Mason's Will, 34 Beav. 494.

Under a bequest of " all my money and movables,"—bonds, book accounts, a claim against an estate or other choses in action will not pass: Finney v. Finney, 1 Pearson, 73 ; Beatty v. Lalor, 15 N. J. Eq. 108.

Time deposits in a savings bank at a distance do not pass under a bequest of " money I may have on hand at the time of my decease," and " money remaining at my decease : " Hancock v. Lyon, 29 Atl. Rep. 638.

Where the testamentary gift was of " any money of which I may die possessed," this was held not to pass the apportioned part of an annuity, nor a legacy due the decedent: Byrom v. Brandreth, L. R. 16 Eq. 475.

Opinion by Mr. Justice Green, May 31, 1899:

We quite agree with the learned auditor in the court below in his disposition of this case. The money deposited in bank to the credit of the firm of John P. Wilkinson & Brother was not the money of John P. Wilkinson, but of a firm of which he was a member. What proportion of it might belong to him as an individual would depend upon a settlement of the partnership accounts, and even when that was done it would have to be paid over to him before his private and exclusive ownership of it could attach. This fund could only be claimed by the executor of the widow under the clause of the will of John P. Wilkinson which gave to his widow, " All money in the house and bank or on hand at the time of my death." At the time of the testator's death there was a small sum of money, $30.00, in the house, and there was to the credit of his individual account in bank the sum of $336.45. These were the only sums of money " in the house and bank or on hand," belonging to him at the time of his death. They would fully satisfy the requirement of the words which gave the legacy, and would obviate any necessity for resorting to another fund which did not belong

to the testator in his individual capacity, in order to give effect to his will. We think this conclusion is so exceedingly plain that any further elaboration of the subject is quite unnecessary.

Decree affirmed and appeal dismissed at the cost of the appellant.