JOHN WILLIAM COYLE et al.

*v.*

ELIZABETH C. DONALDSON AND JULIA A. SUTHERLAND, executrices under the will of James Coyle, deceased, et al.

[Decided December 6th, 1918.]

1. Where by a codicil the testator increased the amount of the gift to his son, which was hedged around with conditions, the increased gift must be construed in the same manner as if it had been included in the original will.

2. The terms of the will in this case creates a spendthrift trust in favor of the son.

3. A testator may lawfully make a bequest of money directly to a legatee without the intervention of trustees, postponing the time of payment, or giving direction to his executors to make partial payments thereof at such times as they might deem proper.

4. The testator, in creating a spendthrift trust, need not specify in the will the particular weakness of the legatee.

5. A bequest of "my coal business" does not include coal on hand or a bank account kept in connection with the business, but does include the leasehold, wagons, horses and other equipment. The word "business" cannot be restricted to the trade and good-will.

On bill, &c.

*Mr. Alexander J. Higgins* and *Mr. John F. Gough,* for the complainants.

*Mr. John J. Fallon,* for John W. Coyle, Jr., defendant.

*Mr. James A. Gordon,* for Elizabeth C. Donaldson and Julia A. Sutherland, executrices, and Elizabeth C. Donaldson, individually.

GRIFFIN, V. C.

The bill in this case is filed by John W. Coyle and wife against the executrices of the last will and testament of James

Coyle, deceased, his heirs-at-law, and certain legatees, among other things, for a construction of clause C of the twelfth paragraph as modified by the fourth codicil to said will, increasing the provision in section C for his son, John W. Coyle, Sr.; and also for the construction of the fourteenth clause of said will.

Said clauses are as follows:

"Twelfth (Clause C) :  To John W. Coyle, Sr., my son, I give and bequeath the sum of four thousand dollars, said money, however, to be paid to said John W. Coyle at such times and in such amounts as my executors may determine to be proper, and whatever may remain of said bequest at the death of my said son, John W. Coyle, Sr., I desire to go to his son, Reginald Coyle, to have and to hold the same to him, his heirs and assigns forever."

"Fourteenth :  I give and bequeath unto my grandson, John W. Coyle, Jr., and my daughter, Elizabeth C. Donaldson, the coal business now owned by me, to have and to hold the same to them, their heirs and assigns forever."

The clause of the codicil affecting said paragraph 12 (clause C) is as follows:

"Fourth :  I increase the provision for my son John W. Coyle, Sr., in section C of the twelfth paragraph of said will from four thousand to eight thousand dollars, subject to the same conditions mentioned in said section C of said twelfth paragraph."

The complainants contend that—

*First.* No spendthrift trust is created by this will.

*Second.* No parol evidence may be introduced to show a spendthrift trust.

*Third.* The bequest to the complainant is absolute.

*Fourth.* The payments must be made within a reasonable time after the executors receive the money.

*Fifth.* The gift of the coal business carried only the good will, equipment, and leasehold rights.

The first four points may be considered together.

Dealing with clause C, as amended by the codicil, my view is that it simply increased the provision for John W. Coyle, Sr., from $4,000 to $8,000, and must be construed in the same manner as if the original will had mentioned the sum of $8,000 instead of $4,000.

The complainant, John William Coyle, by his bill, asserts that he is entitled to the payment of the sum of $8,000 absolutely out of the proceeds of sale of the real estate described in the twelfth paragraph of the will, which real estate has been sold. Complainant, in his argument, claims that the discretion given to the executrices "to pay at such times and in such amounts as they may determine to be proper" was referable simply to the sale of the real estate, upon the sale of which all discretion ceased, and it became the duty of the executors to pay the whole legacy forthwith.

Construing the will from its four corners, to ascertain the intention of the testator, it is quite plain he intended to place this legacy on a footing different from the others. By the twelfth paragraph of the will he gives certain lands to his executors "to sell at public or private sale in their discretion, and to distribute the proceeds from the sale of said lands as follows," &c. He thereafter makes thirteen separate and independent bequests of sums of money, in subdivisions from A to M, both inclusive. In every such bequest, excepting subdivisions B and C, the gifts are absolute, without any restraint or condition annexed. In subdivision B the gift is "to Adele Coyle and Harold Coyle, children of my son James T. Coyle, deceased, I give and bequeath the sum of $1,000 each, the said money to be used for the education and maintenance during minority of said children," with a provision over, in case of the death of either or both of said children, of any residue there might be. It will thus be perceived, in subdivisions B and C, that while the gifts were direct to the legatees, there were annexed active trusts, in the one case to use the funds for education and maintenance, and, in the other, to pay the $8,000 at such time and in such amounts as the executors might determine to be proper. As between the legatee and the executors, what the testator plainly intended was that the executors should pay such sums of money from time to time as they might deem proper until the legacy of $8,000 would be exhausted. What effect the language used may have upon passing the unpaid portion of the legacy, if any, on the death of the legatee, or upon the rights of the remainderman and creditors of the legatee is unnecessary

to consider, as the issue framed does not call for such determination.

But the complainant contends that testator attempted to create a spendthrift trust which is void, because the money is given directly to the beneficiary, and not to trustees for his benefit.

The views thus expressed by complainant are unsound. A testator has the right to dispose of his property by will in any manner, according to his desire, so long as it does not contravene the law. It is within the power of a testator to make a bequest of moneys to a legatee directly, without the intervention of trustees, postponing the time of payment, or giving a discretion to his executors to pay the legacy in partial payments at such times as they might deem proper. *Read* v. *Patterson, 44 N. J. Eq. 211 (219)* ; *Pedrick* v. *Pedrick, 48 N. J. Eq. 313; 50 N. J. Eq. 479.* And it is unnecessary to specify in the will the particular weakness of the legatee which moved the testator to lodge the discretion in the executor or trustee. In *Lippincott* v. *Pancoast, 47 N. J. Eq. 21,* and in *Hardenbergh* v. *Blair, 30 N. J. Eq. 645,* and *Read* v. *Patterson, supra,* the testators stated no reasons why they left the time and amounts of payments to the discretion of the trustees.

Clause C, as amended by the codicil, is therefore valid, giving to the executors, in the nature of a trust, a discretion to pay to the complainant, John W. Coyle, the sum of $8,000 at such times and in such amounts as they may determine to be proper.

No evidence was offered by the complainant to the effect that the executors, in making payments, acted in bad faith or in an arbitrary manner, and no relief is sought on these grounds; therefore the testimony offered by the defendants as to the habits of the complainant John has not been considered.

The last point made by the complainants is that the fourteenth paragraph passed "only the good will, equipment and leasehold rights." This construction is combatted by the defendants, Mrs. Donaldson and John W. Coyle, Jr., who claim that it also includes the coal on hand, bills receivable and the bank account used in connection with the business.

The testator had other bank accounts in which he deposited moneys derived from sources other than the sale of coal; out of which he drew moneys for his living and other expenses. No checks were drawn on the coal account for any of these purposes, excepting for taxes and to replenish his special account. Some moneys, however, were drawn therefrom for investment.

Moneys deposited in his business bank book which were derived from the sale of coal (and on some occasions from other sources) were deposited in the name of "James Coyle." The checks used for drafts on this account had, on the side, the words "James Coyle, Coal." On the date of the will he had $61.91 on deposit in an account marked "James Coyle, Special," $8,027.83 in a savings account, and in the coal account, $19,463.41; he also had on hand moneys derived from the business amounting to $3,231.87. When he made the codicil he had $116.06 in the special account; $1,007.80 in the savings account; $1,978.12 in the coal account, and $775.34 cash on hand. When the will was made he had bills payable in connection with the business amounting to $22,945.27, and accounts receivable, $28,234.69. At the time of his death the bills payable were $20,369.60, and accounts receivable $26,243.33. On the date of the will he had coal on hand valued at about $5,448.00, and when he died this item (including feed of the value of about $100) amounted to $7,154.38.

The defendant, John W. Coyle, Jr., was continuously in the employ of testator in the business for many years before testator's death. The business was conducted on leasehold premises, terminable on not less than thirty days' notice.

The defendants, Mrs. Donaldson and John W. Coyle, Jr., on the foregoing state of facts, contend that it was the purpose of the testator, when he used the words "the coal business now owned by me," to give to them not only the leasehold, horse, wagons and equipment, but also the coal on hand and the moneys in bank.

The word "business" was defined by Vice-Chancellor Bird in the case of *Braeutigam* v. *Edwards, 38 N. J. Eq. 542 (545)*. He says " 'Business' does not mean stock, or machinery, or capital, and the like. While business cannot be done without these, in

commercial language it is as distant from them as labor and capital. * * * In other words, business does not mean dry-goods, nor cash, nor iron rails or coaches. Business is not these lifeless and dead things, but the activities in which they are employed." These expressions were used in a bill for specific performance where, after an agreement was entered into, a difference arose between the parties as to whether a sum of money which was to be paid by the purchasing partner out of the proceeds of the business should be charged against him. There it clearly appeared what the parties meant by using the word "business."

In the well-considered case of *Delaney* v. *Delaney, 15 L. R. Ir. 55,* the vice-chancellor was called upon to construe the following language in a will:

> "I direct my executors to assign and transfer to my sons Andrew and Henry my business and good-will therein, with the premises in which the same shall be carried on, when Henry attains the age of twenty-one years."

The claim was that this carried the stock in trade, sacks, horses and drays used by the testator in carrying on the business. The court said "Henry's claim depends on the meaning to be given to the words 'my said business.' * * * Ordinarily speaking. 'business' is synonymous with trade, and it means, in my opinion, the process of buying, selling or manufacturing and the like, without comprehending the capital employed or the stock in trade, whether of material or manufactured goods." The conclusion he reached was that the stock in trade did not pass; but that the sacks, horses and drays, being used solely for the purpose of the business, and forming, as it were, a part of the implements of trade, might be said to pass as part of the business; and he so declared.

In *Johnson, Administrator,* v. *Goss. 128 Mass. 433,* the testator, being the owner of seven hundred and twenty-seven shares in a corporation in Chicago for the manufacture of sash and blinds. and the corporation being indebted to him in a large amount. made his will, in which he used the following language: "I devise and bequeath to my son, F. W. Goss, one-half of my

interest in the lands and machinery and effects in sash and blind factory in Chicago, State of Illinois," and made a like disposition of the other half to his son-in-law, Phillips. The court held that the legatees were each entitled to one-half of the seven hundred and twenty-seven shares, but that the debt did not pass to them by the request.

In *Torrey* v. *Torrey, 70 N. J. Law 672,* the testator, by his will, said:

"I give and bequeath to my dear wife, Martha Torrey, all of this world's goods of which I may be possessed at the time of my death, confident that she will care for our dear children with the same love and devotion which she has ever shown them."

It was contended that the words "goods" could not include realty. From an examination of the circumstances surrounding the testator it appeared that besides his real estate he had only a few shares of stock in a building association and his household effects, not enough to pay his creditors when he died. The court found that the words indicated very strongly the testator's purpose to enable his wife, so far as lay in his power, to care for their dear children as her proven love and devotion towards them would prompt her to do, and that such a purpose was futile if he placed in her hands only his little personal property which, at his death, would be wholly absorbed by complying with his preceding direction that his debts and funeral expenses should be at once paid. The conclusion reached by the majority of the court was that the real estate passed under this clause.

Construing this clause in the light of the foregoing decisions, I am inclined to the view that the moneys in bank and the coal on hand and the accounts and bills payable did not pass to the legatees. Touching the horses, wagons, leasehold and the equipment used in carrying on the business, a different question is presented. If the word "business" used in the will is given the narrow meaning ascribed to it by Vice-Chancellor Bird, and by the Vice-Chancellor in *Delaney* v. *Delaney,* then, practically nothing passed. Yet it is quite plain, in the light of the circumstances surrounding the testator, that he meant to give to

*90 N. J. Eq.*    Eckrode *v.* Endurance T. & R. Corp. of N. Y.

his grandson and daughter something of substantial value. For years he had been carrying on a business on the leased premises; his grandson had grown up in the business; and to give them the right to carry on his coal business without also giving to them the horses, wagons and other equipment owned by him and used in carrying on the business, would be to give them practically nothing, as they would have a right to carry on business apart from his will.

The conclusion I have reached is that the lease, horses, wagons and other equipment which were used by the testator in carrying on his business passed by this clause.

While the views above expressed are in accordance with the admissions of the complainants, an examination and decision of the question involved, apart from the admissions of the complainants, is rendered necessary because there are infants in the case who are interested in the result, and whose rights should be protected.

A decree will be advised in accordance with the foregoing conclusions.