IN RE ESTATE OF RAYMOND P. ZENTS, DECEASED. CHARLES DUWANE ZENTS, APPELLANT, V. TERESA M. ZENTS, APPELLEE.

26 N. W. 2d 793

Filed March 21, 1947. No. 32185.

*Beatty, Clarke & Murphy,* for appellant.

*W. A. Stewart* and *V. H. Halligan,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, and CHAPPELL, JJ., and NUSS, District Judge.

PAINE, J.

This action comes to this court on a question arising as to the interpretation of two paragraphs in the will of Raymond P. Zents. One-half of a deposit of money in the bank account of the "Hub Bar" is claimed by the testator's brother, to whom had been bequeathed a one-half interest in said liquor business, and the same deposit is also claimed by testator's widow under the residuary clause of the will, which was in her favor.

Raymond P. Zents, died September 23, 1944, leaving a last will, which had been executed by him September 3, 1943. He left no children surviving him, but left to his widow a certain piece of business property which was owned by the two of them in joint tenancy, which building was appraised at $45,814.81. He left to his brother, Arthur A. Zents, and his sister, Mrs. Mark Moran, another business property and warehouse in North Platte, of the appraised value of $14,000. He left to Richard Jerome Enright, the nephew of his wife, two lots in the original town of North Platte, of the appraised value of $2,000.

In paragraphs 5 and 6 of the will, which are the paragraphs under consideration in this action, he provided as follows:

"5. I give and bequeath to my brother, Charles Duwane Zents of Des Moines, Iowa, all my interest in and to the HUB BAR situated and now being operated on North Jeffers Street in the City of North Platte, which generally is the ownership of said`business, subject to a written contract outstanding with Carl Rippen whereby he may acquire an undivided one-half (½) interest by purchase in payment as in said contract provided, and

provided that should my said brother precede me in death, then I direct said interest and property shall pass to my brother, Arthur A. Zents, and my sister, Mrs. Mark Moran, and my nephew, Richard Jerome Enright, or to such of them as shall survive me, share and share alike.

"6. All the residue and remainder of my property of whatsoever kind and wheresoever situate, I give, devise and bequeath unto my beloved wife, Teresa M. Zents."

It will be seen that it is necessary to understand the relation of the deceased to the Hub Bar, as shown by the record, if we are to reach the proper conclusion in this matter.

Raymond P. Zents had been a successful plumbing contractor, and had accumulated sufficient means to retire. Carl Rippen had been an intimate friend of Zents for many years, and Zents decided to finance Rippen in the purchase of the Hub Bar in North Platte, Nebraska, from its owner, who had been called to the service of his country.

The parties entered into a partnership agreement on March 26, 1943, under the name of Rippen & Zents, in which the first party, Zents, agreed to furnish all the cash and credit necessary to purchase the liquor store known as the Hub Bar, including the stock, merchandise, and fixtures, and Rippen agreed to devote his entire time to conducting said business, for which he was to receive a monthly salary of $200. This agreement was offered and received in evidence as exhibit 1.

In addition, Rippen agreed to pay Zents back one-half of the net costs of the business, the written agreement providing that he should make payments monthly out of his half of the net profits. Rippen was to keep books of account and deposit all receipts in the McDonald State Bank in the name of the Hub Bar, and to have a financial statement made each month, together with an invoice of the stock on hand, by a certified public accountant, and after the first party had been repaid

one-half of the purchase price then the parties should divide the net profits of the business equally, after Rippen had received his $200 a month. Rippen agreed to secure the licenses and permits in his own name and to operate the business as the "Hub," and the bank account and business was to be carried and conducted in the trade name of the "Hub Bar," separate and apart from Rippen's individual account.

This in brief sets out the partnership contract under which the business was established. The provision that Rippen should pay Zents one-half of the net earnings monthly was apparently waived by Zents.

On the back of exhibit No. 1, the partnership agreement, appear the following endorsements of payments: "Received of Carl Rippen the following payments on this partnership agreement." July 8, 1943, $1,000; September 2, 1943, $1,000; November 13, 1943, $1,000; March 30, 1944, $1,000; August 4, 1944, $1,500; all received by R. P. Zents. Total payments, $5,500.

Carl Rippen testified as to how he made the first payment. He said that on July 8, 1943, he checked $1,000 out of the Hub Bar account to himself, and then $1,000 to his partner, R. P. Zents. He then gave Mr. Zents his check on his personal account for $1,000 on the partnership deal. Mr. Zents, when he got the first payment, by mistake wrote down $2,000 paid, and then, as appears on the back of exhibit No. 1, changed it to only $1,000, which was all Mr. Rippen had paid him from his personal account, the other $1,000 being the profit which Mr. Zents had received at the same time. The transactions were all handled the same way at each payment.

In regard to these payments, Mr. Rippen said that when he saw Mr. Zents he would tell him that they had too much money in the bank and should divide it; and that during last summer before his death Mr. Zents was taking trips to Arizona and Colorado for his health

and sometimes he would not see him for three or four months at a time.

He further testified that when the last payment was made on the partnership contract on August 4, 1944, being about a month and a half before Zents died, when he paid the final half, $1,500, on this transaction, it did not disburse all of the cash or profits on hand, but only enough was checked out to finish paying for Mr. Rippen's half interest, leaving the other partnership funds in the Hub Bar account in the bank.

Carl Rippen also testified that at no time was any of the personal money of himself or Mr. Zents kept in the Hub Bar account, but that it was all partnership funds; that at times it was difficult to buy any liquors during the war; and that as the liquor stock would run lower the cash in the partnership account would run higher. Rippen testified that at the time of the death of Mr. Zents each one of them owned a clear undivided one-half interest in the business and that there were no debts outstanding; and that the monthly pay roll for help was $600 to $700.

J. H. Hansen testified that he was a public accountant, had been acquainted with Mr. Zents for years, and audited the accounts of the Hub Bar monthly from a statement brought in by Mr. Rippen, with an inventory of the stock at the end of each month; that exhibit No. 4 is an operating statement, showing among other things the business of the Hub Bar from January 1, 1944, to September 23, 1944, the date of the death of R. P. Zents; that the total assets of the partnership on September 23, 1944, consisted of cash on hand, $50, cash in bank, $7,346.29, total, $7,396.29; that the inventory of liquors on hand that day was $7,062.82; that the fixtures and equipment, less depreciation, was $2,181.80; that the rent, license, and insurance prepaid was $428.28, making the total assets of the Hub Bar on September 23, 1944, $17,069.19.

It was stipulated that exhibit No. 5 was the original files from the county court of Lincoln County in the probate of the estate of Raymond P. Zents, and that the petition was filed, proper notice given, and will duly allowed; that Arthur A. Zents and Charles Duwane Zents were the duly appointed and acting executors of the estate; and that the widow, Teresa M. Zents, was granted the sum of $350 a month for widow's allowance and an additional sum of $200 in cash.

Among the papers in exhibit No. 5 is an application of Carl Rippen, dated December 23, 1944, to liquidate and close up the partnership of Rippen & Zents, and an offer to purchase the one-half interest of the estate therein. On January 10, 1945, there was filed an acceptance of this offer, signed by the executors, Arthur A. Zents and Charles Duwane Zents.

On January 25, 1945, an order was entered by the county judge, showing that all persons had been notified of the application of Carl Rippen. Teresa M. Zents, the widow, being present with her attorney, William A. Stewart, Jr., and no objections being made by any person, the court approved the application of Carl Rippen to acquire the undivided one-half interest of the estate in the Hub Bar.

It was stipulated that the sum of money paid to the executors by Carl Rippen, under order of the county court, for a one-half interest in the Hub Bar was made up of the following items: That one-half of the money in the McDonald State Bank on the date of the death of deceased was $3,673.14; that one-half of the cash in the till was $25; that one-half of all other assets outside of cash was $4,648.49; and that one-half of the profits of the business from September 23, 1944, being the date of the death of deceased, until the 6th day of February, 1945, was $2,693.10, making a total amount paid of $11,039.73. Upon receipt of this amount on February 6, 1945, the executors transferred to Carl Rippen the one-half interest in the Hub Bar owned by the estate.

On April 4, 1945, the executors filed application in the county court for a construction of the will, there being a doubt as to the ownership of the testator's one-half of the undivided profits in the partnership account of the Hub Bar, it being claimed by Charles Duwane Zents under the provisions of paragraph 5 of the will and by Teresa M. Zents, the widow, under paragraph 6, each of said parties having filed petition to the court for said sum of money.

On August 22, 1945, a hearing was had upon said petitions, and it was ordered that the application of Charles Duwane Zents be dismissed. The court found generally in favor of Teresa M. Zents; held that she was entitled to receive the money under the residuary clause; and found that it was not the intention of the deceased to devise to Charles Duwane Zents the accumulated profits from the operation of the Hub Bar.

Thereupon, Charles Duwane Zents appealed to the district court from such adverse finding of the county court. To his petition an answer was filed by Teresa M. Zents, setting out and alleging that she was the owner of said sum of $3,698.14 as residuary legatee in her husband's will. A reply was filed, bringing up the same issues heretofore set out. Trial was had to the district court on May 21, 1946, and the matter was taken under advisement.

Thereafter the district court decided that, in view of the partnership agreement between Carl Rippen and Raymond P. Zents, being exhibit No. 1, and its provision for a settlement of the cash account each month, and the words in the will, "which generally is the ownership of said business," and the fact that the withdrawal of $1,000 had been made from the cash account of the Hub Bar on the day before the will was drawn, it was not the intent of the testator to devise the cash account of the Hub Bar to his brother Charles, and that the interest of the deceased in said cash account passed to Teresa M. Zents upon the death of the deceased under the residuary

clause of the will. Therefore, the application of Charles Duwane Zents was denied and dismissed.

A motion for new trial, setting out ten errors of the court, was filed. The assignments of error charge that the judgment is contrary to law and the evidence; that the court erred in holding that all of the interest of the testator in the Hub Bar, which was the copartnership of Rippen & Zents, did not include his interest in the cash on hand and the partnership bank account, which was carried in the trade name; and that the court erred in holding that the widow was entitled to the one-half interest of the testator in the money on deposit in the name of the Hub Bar. It is also alleged that the court erred in finding that the testator had not bequeathed to his brother Charles his interest in the bank account of the Hub Bar, and should have found that it was the intention of the testator to bequeath to his brother Charles all of the testator's interest in the property and assets of the copartnership of Rippen & Zents, including the money on hand, which was used in the conduct of the business of said copartnership; and in finding that the widow as residuary legatee would take the testator's interest in the moneys belonging to the Hub Bar at the date of his death.

This brings us to the important question which is involved in this appeal, which is: Did this amount, being one-half of the balance of the Hub Bar checking account and cash in the till, amounting to $3,698.14, pass under the will to the testator's brother Charles, to whom he bequeathed all his interest in and to the Hub Bar; or did this amount pass to the widow under paragraph 6 of the will, in which he gave her all of the residue and remainder of his property of every kind?

We are cited to many opinions which set out the court's duty in such cases. This court very recently held: "It is the court's duty in the construction of a will, under the provisions of section 76-205, R. S. 1943, to give effect to the true intent of the testator so far as it can be collected

from the whole instrument, if such intent is consistent with the rules of law." Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713.

And, again: " 'No particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it.' Weller v. Noffsinger, 57 Neb. 455." Krause v. Krause, 113 Neb. 22, 201 N. W. 670.

"The intention of the testator must be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, nor conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property." In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752. See, also, Woelk v. Luckhardt, 134 Neb. 55, 277 N. W. 836.

"In determining the intention of a testator, it is the duty of the court to examine the will in its entirety, giving consideration to its every provision, giving the words used their commonly and generally accepted meaning, and to indulge the presumption that the testator understood the meaning of the words used." Salmons v. Salmons, 142 Neb. 66, 5 N. W. 2d 123. See, also, Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11; In re Estate of Schuette, 138 Neb. 568, 293 N. W. 421.

"While * * *, the purpose of construction, as applied to wills, is unquestionably to arrive at the intention of the testator, that intention is not that which existed in the .mind of the testator, but that which is expressed by the language of the will." 28 R. C. L., Wills, §174, p. 214. See Hill v. Hill, 90 Neb. 43, 132 N. W. 738, 38 L. R. A., N. S. 198.

While it appears to be most difficult to find cases closely in point, yet one New Jersey case involves a

somewhat similar provision. In Coyle v. Donaldson, 91 N. J. Eq. 138, 108 A. 308, the Court of Errors and Appeals of New Jersey in an opinion reversed a decision in the same case in 90 N. J. Eq. 122, 105 A. 605, rendered by the Court of Chancery of New Jersey, in which that court had held: "A bequest of 'my coal business' does not include cash on hand or a bank account kept in connection with the business, but does include the leasehold, wagons, horses and other equipment. The word 'business' cannot be restricted to the trade and good will." It was stated in the final opinion that, as to the meaning of the words or phrase in the 14th clause of the will, "the coal business now owned by me," the vice-chancellor in the lower court had decided that this term included only the horses, wagons, and good will of the business. The Court of Errors and Appeals said: "We think this construction is too narrow," and that "The word 'business,' in a contract, not only includes the good will of the business, but the money in bank and cash on hand, which came from the sale of goods, so held in McGowan v. Griffin, 69 Vt. 168."

The holding of the Court of Errors and Appeals is concisely expressed in the first syllabus, as follows: "The words in the will of James Coyle, 'the coal business now owned by me,' pass and include, not only the good-will of the business, the leasehold interest of the land on which the coal business was conducted, the horses, wagons, and other equipment used by the testator, in carrying on the business of coal merchant, but, in addition thereto, coal on hand, cash and checks, cash on deposit in check account 'James Coyle Coal,' and difference between bills receivable and payable; i.e., for coal sold and delivered."

A Canadian, who was the keeper of a country village grocery shop, by his will gave to his sister, Eliza Jane Isaac, "the House and land With all Household furniture and all the Stock and trade now in house and out of house With all Book Accounts now

Due me." It was argued that $267 on deposit with testator's banker and $60 cash on hand and a quantity of cordwood were not included in this gift. Meredith, C. J., said: "I have already stated the meaning which I would give to the words 'stock and trade,' and it follows from what I have said that the money in bank and in hand, if part of the capital employed in the testator's business, and so much of the cordwood as was intended for use in the business, * * * are embraced in the bequest of 'the stock and trade.'" In re Holden, 5 Ontario Law Reports, 156.

We have also found the case of Re Hawkins, in High Court of Justice, Chancery Division, a decision by Mr. Justice Astbury, in which a testator bequeathed his business and plant in London to his brother, and it was held that he had given the house, the bank balance, and book debts. Re Hawkins (1913), 109 Law Times Reports, 969.

The Hub Bar, in the instant case, was legally a partnership, and this court has said: "A partnership is an entity, distinct and apart from the members composing it, and for the purpose for which it was created, it is a person having its own assets and liabilities. Any benefit or liability attaching to a member of a partnership results from the partnership relation." State v. Pielsticker, 118 Neb. 419, 225 N. W. 51.

"Where a testator in his lifetime was dependent for a livelihood on the income from investments, and the general intention of his will is to make such disposition of his estate as to enable his wife to continue in the same home, and live in the same way that he and she had lived in his lifetime, the words of the will are to be interpreted in the light of this general intention, and under a bequest to the wife, of 'all money in the house and bank or on hand at the time of my death,' she would be entitled to all specific sums of money which testator had at the time of his death, attainable

for his immediate use in case of need." Wilkinson's Estate, 192 Pa. St. 127, 43 A. 411.

As throwing some light on the plan and desire of the testator in the case at bar, it will be noted in the 5th paragraph of the will, that if his brother Charles died first the testator provided that his half interest in the business of the Hub Bar should not go to his wife, but should go to his brother Arthur, his sister, and his wife's nephew, with no interest therein or part thereof to go to his wife. Now, stripping the bequest in paragraph 5 down to its simplest terms, it would read, I give my brother Charles all my (half) interest in and to the "Hub Bar," which generally is the ownership of said business.

If there had been outstanding bills of the Hub Bar, they would have been paid out of its bank account, and when the testator gave to his brother all of his interest in the ownership of said business we have reached the conclusion that the testator by the language he employed in his will intended to and did give to his brother the one-half interest in the Hub Bar bank account which belonged to, and had been accumulated in, that business and was a part thereof.

The judgment of the district court is reversed and the cause is remanded with directions to have a judgment entered in accordance herewith.

REVERSED AND REMANDED.

WENKE, J. participating on briefs.