Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/08/2026 08:13 AM CDT

IN RE ESTATE OF FRANKLIN SCHNEIDER, DECEASED.

CHRIS SCHNEIDER, APPELLANT, V. KYLE SCHNEIDER,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
FRANKLIN SCHNEIDER, DECEASED, APPELLEE.

___ N.W.3d ___

Filed May 8, 2026.    No. S-25-297.

1. **Decedents' Estates: Judgments: Appeal and Error.** In the absence of
an equity question, an appellate court, reviewing probate matters, exam-
ines for error appearing on the record made in the county court. When
reviewing a judgment for errors appearing on the record, the inquiry is
whether the decision conforms to the law, is supported by competent
evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Decedents' Estates: Wills: Trusts: Judgments: Appeal and Error.**
The interpretation of the words in a will or a trust presents a question of
law. When reviewing questions of law in a probate matter, an appellate
court reaches a conclusion independent of the determination reached by
the court below.

3. **Decedents' Estates: Wills: Intent.** The cardinal rule concerning a
decedent's will is the requirement that the intention of the testator shall
be given effect, unless the maker of the will attempts to accomplish a
purpose or to make a disposition contrary to some rule of law or pub-
lic policy.

4. ____: ____: ____. To arrive at a testator's intention expressed in a will,
a court must examine the decedent's will in its entirety, consider and lib-
erally interpret every provision in a will, employ the generally accepted
literal and grammatical meaning of words used in the will, and assume
that the maker of the will understood words stated in the will.

5. **Wills.** When language in a will is clear and unambiguous, construction
of a will is unnecessary and impermissible.

6. **Wills: Words and Phrases.** Ambiguity exists in a will when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings.

7. **Wills: Intent: Words and Phrases.** A patent ambiguity is one which exists on the face of an instrument and must be removed by interpretation according to legal principles, and the intention of the testator must be found in the will.

8. **Decedents' Estates: Wills.** A latent ambiguity exists when the testator's words are susceptible of more than one meaning, and the uncertainty arises not upon the words of the will as looked at in themselves, but upon those words when applied to the object or subject which they describe.

9. **Parol Evidence: Wills: Intent.** Parol evidence is inadmissible to determine the intent of a testator as expressed in his or her will, unless there is a latent ambiguity therein which makes his or her intention obscure or uncertain.

10. **Wills: Evidence.** Extrinsic evidence is admissible both to disclose and to remove latent ambiguity of a will.

11. **Trial: Evidence: Proof.** Where a party has shown that competent evidence exists to support his or her burden of proof, and competent evidence to the contrary has been produced, or different conclusions or inferences may reasonably be drawn from the evidence, it is then exclusively the province of the fact finder to determine the weight of the evidence and judge the credibility of witnesses.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Douglas County: SHERYL L. LOHAUS, Judge. Reversed and remanded for further proceedings.

William N. Beerman, Benjamin C. Deaver, and Sydney M. Grad, of Pansing Hogan Ernst & Buser, L.L.P., for appellant.

Anne Marie O'Brien and Anthony T. Baudler, of Smith Pauley, L.L.P., for appellee.

FUNKE, C.J., CASSEL, STACY, PAPIK, FREUDENBERG, BERGEVIN, and VAUGHN, JJ.

Cassel, J.

## I. INTRODUCTION

Decedent's will gave to one of his sons "any business or interest in any business I own." The issue is whether that provision included certain real estate owned by decedent. The county court found no ambiguity on the face of the will and refused to consider extrinsic evidence. Because the admitted evidence disclosed a factual dispute and the court's order did not determine whether there was latent ambiguity, the decision does not conform to the law. Accordingly, we reverse the county court's order and remand the cause for further proceedings.

## II. BACKGROUND

### 1. Will

Franklin Schneider (decedent) died on November 29, 2022, and is survived by two sons, Kyle Schneider and Chris Schneider. Two months before his death, decedent executed a "Last Will and Testament." One provision gave to Chris $50,000 and "any pieces of equipment of his choosing that I own at my death" and stated that the bequest was intended to allow Chris to start his own business. A different provision gave "all the rest, residue and remainder of my property, both real and personal," to Kyle and three others, with each individual receiving 25 percent.

The focus of this appeal is "Article Tenth." It stated: "I give, devise and bequeath any business or interest in any business I own at my death in its entirety to my son **CHRIS SCHNEIDER**. In so doing, **CHRIS SCHNEIDER** is authorized to take any action and to enter into any transaction, agreement or commitment which he deems advisable."

### 2. Informal Probate and Amended Inventory

Kyle filed an application for informal probate of the will and for his appointment as personal representative. The registrar

issued a statement of informal probate of the will and appointed Kyle as personal representative.

Kyle later filed an amended inventory. Schedule A listed five parcels of real estate owned by decedent with a total fair market value of $1,081,500. Schedule B identified stocks and bonds totaling over $700,000. Schedule C showed "Mortgages, Notes and Cash" of approximately $53,000. Schedule F cataloged property owned by "CBJ, Inc." It identified bank accounts and equipment worth $867,515.97.

### 3. Petition for Supervised Administration and Determination of Entitlement to Estate Assets

Chris filed a petition seeking supervised administration and a determination of entitlement to estate assets. He alleged that Kyle had failed to fully carry out Article Tenth of the will. According to the petition, decedent's businesses and business interests at the time of death included "C.B.J. Construction Co., Inc."; "CBJ Construction"; a commercial real estate business encompassing commercial real estate located on I Street in Omaha, Nebraska (the shop); and a residential real estate rental business encompassing rental property located on Monroe Street in Omaha. According to Chris, the shop was CBJ Construction's physical location and place of operation. Chris acknowledged that title to the real estate was held in decedent's name, but Chris asserted that decedent "effectively held his commercial real estate business as an unincorporated sole proprietorship." Chris alleged that supervised administration was necessary because Kyle did not intend to distribute the shop to Chris.

### 4. Hearing

The court held a hearing on the petition. Without objection, it received three exhibits: Chris' affidavit, Kyle's affidavit, and the affidavit of decedent's accountant.

Chris stated in his affidavit that in 2004, he began working with decedent at CBJ Construction, a concrete business.

According to Chris, CBJ Construction had operated out of the shop since at least 1995 and decedent purchased the two real estate parcels composing the shop in 2006. Chris stated that decedent paid himself rent from CBJ Construction. Chris attached to his affidavit records from the county assessor's office showing that the class for one of the parcels composing the shop was listed as "'Commercial'" and the class for the other as "'Industrial.'" Chris noted that in 2021, C.B.J. Construction Co., Inc., maintained a commercial property insurance policy covering the shop.

Chris also relied on income tax returns for 2021. Decedent's individual income tax return reported the 2021 rent payments he received from C.B.J. Construction Co., Inc., as business income and claimed business depreciation on the shop to offset the business income. Further, decedent reported the rent payments as qualified business income and designated the rental payments for the shop under "'Commercial Building - Safe Harbor.'" Decedent also specifically claimed the "Section 199A Trade or Business Safe Harbor for Rental Real Estate" and identified the shop as being a commercial property. The tax return for C.B.J. Construction Co., Inc., claimed a deduction for the rent payments as an ordinary and necessary business expense.

The affidavits of Kyle and decedent's accountant reflect that they did not know decedent to have any sort of commercial real estate business. To Kyle's knowledge, decedent purchased the shop with personal funds and not business funds. Kyle stated that decedent used the shop "for much more than just business operations related to CBJ Construction Co., Inc.," and "did many things" there outside the scope of the concrete-pumping business, including woodworking. He stated that decedent's personal property remains at the shop and that decedent continues to have personal mailings sent there. Kyle stated that "the majority of business operations occurred off-site" and "not where CBJ Construction Co., Inc. leased premises to house its materials." Decedent's accountant

stated that "neither the Properties nor the equipment stored on the Properties were used in furtherance of any commercial real estate business" and that decedent's concrete-pumping business was his only business venture.

### 5. County Court's Order

The court summarized the parties' arguments regarding the shop. It framed the issue as determining whether decedent's "intention is clear on the face of the Will or whether an ambiguity exists" and stated that parol evidence is inadmissible to determine the testator's intent where the ambiguity is on the face of the instrument. The court quoted a legal dictionary's definitions of "business" and "interest."

The court declared that it found no ambiguity on the face of the will. It made no comment about the existence of any latent ambiguity. The court stated that using the common meanings of "business" and "interest," Chris was entitled to the business assets on the amended inventory—assets he had already received from Kyle. It further stated that the evidence submitted in exhibit 9—Chris' affidavit and attachments— was extrinsic evidence, which the court was "prohibited from considering." The court found that the evidence failed to show Kyle had breached his duties as personal representative. Accordingly, the court denied Chris' request for entitlement of the estate assets and his request for court supervision.

Chris filed a timely appeal, and we moved the case to our docket.[1]

### III. ASSIGNMENTS OF ERROR

Chris alleges that the county court erred in (1) finding that the will was unambiguous; (2) finding that it was prohibited from considering Chris' affidavit; (3) failing to find that the shop was either a business, part of a business, or an interest in a business within the meaning of Article Tenth of the will; (4) endorsing the amended inventory and finding that all

---

[1] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

"business" assets had already been distributed to Chris; and (5) denying Chris' request for supervised administration.

## IV. STANDARD OF REVIEW

[1] In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[2] The interpretation of the words in a will or a trust presents a question of law.[4] When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.[5]

## V. ANALYSIS

### 1. Interpretation of Will

Chris' first three assigned errors relate to the court's reading of the will. Chris contends that there is a latent ambiguity because decedent did not define "business" or "interest in any business." Thus, Chris argues that the court erred in finding that the will was unambiguous and finding that it was prohibited from considering Chris' affidavit.

### (a) General Principles

[3-5] The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy.[6] To arrive at a testator's intention expressed in

---

[2] *In re Estate of Barger*, 303 Neb. 817, 931 N.W.2d 660 (2019).

[3] *Id.*

[4] *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021).

[5] *Id.*

[6] *Id.*

a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in a will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will.[7] When language in a will is clear and unambiguous, construction of a will is unnecessary and impermissible.[8]

### (b) Ambiguity

[6] Ambiguity exists in a will when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable interpretations or meanings.[9] An ambiguity may be either patent or latent.[10]

[7] A patent ambiguity is one which exists on the face of an instrument and must be removed by interpretation according to legal principles, and the intention of the testator must be found in the will.[11]

[8] A latent ambiguity exists when the testator's words are susceptible of more than one meaning, and the uncertainty arises not upon the words of the will as looked at in themselves, but upon those words when applied to the object or subject which they describe.[12]

### (c) Extrinsic Evidence

[9,10] Two equally important principles define the role of parol, i.e., extrinsic, evidence. Parol evidence is inadmissible to determine the intent of a testator as expressed in his or her will, unless there is a latent ambiguity therein which makes

---

[7] *Id.*

[8] *Id.*

[9] *In re Estate of Barger, supra* note 2.

[10] See, e.g., *In re Estate of Brinkman, supra* note 4.

[11] *Id.*

[12] *Id*.

his or her intention obscure or uncertain.[13] Extrinsic evidence is admissible both to disclose and to remove latent ambiguity of a will.[14]

### (d) Application

The county court found "no ambiguity on [the will's] face." Its order did not explicitly mention either a patent or a latent ambiguity. On appeal, no party contends that there is patent ambiguity. We agree that there is not.

Chris argues that there is latent ambiguity as to the scope of decedent's business and interest in any business. He points out that decedent's will did not define "business" or "interest in any business," nor did it include a list of assets falling within Article Tenth. Both parties offered extrinsic evidence on the issue, which the court received without objection.

However, it is not apparent from the court's order that it considered whether there was a latent ambiguity. The court's statements—that there was no ambiguity and that it was prohibited from considering extrinsic evidence—lead us to believe that it did not.

But extrinsic evidence is admissible to explain a latent ambiguity in a will, where such evidence is necessary to enable the court to ascertain the intention of the testator.[15] Here, it was needed, both to disclose and to remove latent ambiguity.

The extrinsic evidence offered demonstrates a factual dispute. Decedent conducted personal and business activities at the shop. He held title to the shop in his individual name and paid himself rent from CBJ Construction. Chris points to evidence that decedent insured the shop as commercial property and indicated in his tax return that the shop was a rental real estate enterprise. But Kyle and decedent's accountant

---

[13] *In re Estate of Barger, supra* note 2.

[14] *Id*.

[15] See *Krueger v. Krueger*, 169 Neb. 82, 98 N.W.2d 360 (1959).

contend that decedent did not have any kind of commercial real estate business.

A treatise concerning wills explains that "'[b]usiness' is an ambiguous expression, which sometimes passes little more than good-will and sometimes passes property and capital."[16] What the term includes "depends, in part, upon the language which is used in the will, and, in part, upon the view which the court takes of the prima facie meaning of 'business.'"[17]

We have considered testamentary gifts involving a business. In a case involving a bequest to a brother of "'all my interest in and to the HUB BAR . . . , which generally is the ownership of said business,'" the issue was whether that brother was entitled to the deposit of money in the bar's bank account or whether that money fell under the residuary clause.[18] The county court determined in that case that the deceased did not intend to devise to his brother the accumulated profits from the bar, and the district court agreed. We stated that "it is necessary to understand the relation of the deceased to the Hub Bar, as shown by the record,"[19] and ultimately determined that "the testator by the language he employed in his will intended to and did give to his brother the one-half interest in the Hub Bar bank account which belonged to, and had been accumulated in, that business and was a part thereof."[20]

In a different case, a testator sold his elevator business— the buildings, the lease, the machinery, and the equipment— approximately 5 months prior to his death. His will gave to his son the "'Grain Elevator property'"[21] but stated that if

---

[16] 4 William J. Bowe & Douglas H. Parker, Page on the Law of Wills § 33.33 at 347 (rev. ed. 1961).

[17] *Id.*

[18] *In re Estate of Zents*, 148 Neb. 104, 105, 26 N.W.2d 793, 794 (1947).

[19] *Id.* at 106, 26 N.W.2d at 794.

[20] *Id.* at 115, 26 N.W.2d at 798.

[21] See *Scriven v. Scriven*, 153 Neb. 655, 658, 45 N.W.2d 760, 763 (1951).

the testator sold the property, the son would be entitled to the proceeds from the sale. We considered what the testator intended his son should take in the event of a sale of the elevator property, particularly whether it included the business' accounts receivable at the time of the sale. In doing so, we stated that the will's language left the testator's intent "somewhat obscure" and that it was "not improper" to consider extrinsic evidence in determining what was included in the sale of the elevator property.[22] Based on the contract for the sale of the elevator property and the testator's practice of handling his bank accounts and collections, we determined that the testator did not intend to include accounts receivable in the event of a sale of the property.

The Supreme Court of Pennsylvania faced an issue somewhat similar to that before us.[23] There, a testator's will bequeathed all of his "'interest in my business'"[24] to certain beneficiaries. The testator's business was originally conducted on leased property, but the testator later acquired title to the property in his name. He purchased the realty using both personal funds and partnership funds. The appellant argued that the real estate was the testator's individual property and not an asset of the business. The appellate court considered that the testator was credited in the partnership's capital account for the personal funds used to purchase the realty, that the partnership's books showed the realty belonged to the partnership, and that the partnership did not pay rent to the testator. The court determined that the realty was included in the testator's bequest of his interest in the partnership business.

Here, uncertainty arises by decedent's use of the phrase "any business or interest in any business I own at my death" with respect to the shop. In light of the evidence produced,

---

[22] *Id*. at 664, 45 N.W.2d at 766.

[23] See *In re Gerlach's Estate*, 364 Pa. 207, 72 A.2d 271 (1950).

[24] *Id.* at 209, 72 A.2d at 272.

this constituted a latent ambiguity. Because it does not appear that the county court considered whether there was a latent ambiguity, its decision does not conform to the law.

[11] But we cannot resolve questions of fact in the first instance. Where a party has shown that competent evidence exists to support his or her burden of proof, and competent evidence to the contrary has been produced, or different conclusions or inferences may reasonably be drawn from the evidence, it is then exclusively the province of the fact finder to determine the weight of the evidence and judge the credibility of witnesses.[25] The initial fact finding regarding latent ambiguity must be made by the county court.

Accordingly, we reverse the county court's order and remand the cause for further proceedings. Upon remand, the court is not restricted to the existing record.

## 2. Remaining Assignments of Error

[12] Chris also assigned errors concerning the amended inventory and the denial of his request for supervised administration. Because we have determined that the county court's order must be reversed and the cause remanded to the county court for further proceedings, we need not resolve these issues. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[26] To the extent that these issues may recur on remand, resolution of them will be guided by the court's resolution of the will's latent ambiguity.

## VI. CONCLUSION

For the reasons explained above, we conclude the following:
• To the extent the county court determined that there was no patent ambiguity, i.e., no ambiguity existing on the face of the will, we agree.

---

[25] *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023).

[26] *Edwards v. Estate of Clark*, 313 Neb. 94, 982 N.W.2d 788 (2022).

• Because the extrinsic evidence showed a dispute about the nature of the shop and whether the decedent intended the shop to be included in the gift of his "business or interest in any business," the court's order—which made no mention of latent ambiguity and stated that the court was prohibited from considering extrinsic evidence—was contrary to law.

Accordingly, we reverse the county court's order and remand the cause for further proceedings.

Reversed and remanded for
further proceedings.