IN RE ESTATE OF JOSEPHA WOTKE.
DAVID SEIFERT, APPELLEE, V. FRED B. WOTKE, APPELLANT.
277 N. W. 45

FILED JANUARY 4, 1938. No. 30157.

*Charles Dobry, B. J. Cunningham* and *W. P. Lauritsen*, for appellant.

*T. T. Bell, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

MESSMORE, J.

This case was tried in the district court for Howard county; jury waived. The will in question was admitted to probate. Contestant appeals.

The contestant contends that the court erred in admitting the will to probate without the allegation and proof of testamentary capacity of deceased, over objections of contestant made before the introduction of any evidence.

The petition on appeal alleges, in substance, that Josepha Wotke died at her home in Howard county on August 4, 1935, leaving a last will and testament; sets forth the heirs and property of the deceased, the filing of the will for probate; provides for notice of hearing, and prays that the will be admitted to probate. The contestant's answer consists, in part, of a general denial, and objections to the probate of the will, because (1) it was not executed as required by law; (2) Josepha Wotke did not have mental ability and testamentary capacity to execute a will, and was not of sound mind and memory.

Both proponent and contestant cite *Seebrock v. Fedawa,* 30 Neb. 424, 46 N. W. 650, wherein it was held: "The burden is upon the proponent of a will, both in the county court and in the district court on appeal, to prove, not only the execution of the will, but the capacity of the testator." This holding was followed in *Murry v. Hennessey,* 48 Neb. 608, 67 N. W. 470, and in *In re Estate of Sweeney,* 94 Neb. 834, 144 N. W. 902.

In *In re Estate of Strelow,* 117 Neb. 168, 220 N. W. 251,. we held: "A legatee or devisee who seeks probate of a claimed will carries the burden of alleging and proving, not only that the testator was possessed of authority and capacity to make the will, but also that the instrument is

in legal form." In that case we find for the first time the words "alleging" and "proving." The contestant cites *In re Estate of Slattery*, 125 Neb. 194, 249 N. W. 597, which follows *In re Estate of Strelow*, in so far as requiring the testamentary capacity to be alleged and proved is concerned. The opinion in *In re Estate of Slattery, supra,* indicated that an objection to the petition of the proponent, to make such petition more definite and certain by alleging the testamentary capacity of the testator in more detail, was sustained, and the opinion further indicated that the question should be 'raised in the county court for the first time, being the court of original jurisdiction in all matters pertaining to the probate of wills (Const. art. V, sec. 16), and did not change the effect and holding in the case of *Seebrock v. Fedawa, supra.*

In the instant case, the contestant's answer put in issue the testamentary capacity of the deceased, and, in the absence of a demurrer to the petition, we deem this sufficient.

Relative to the question of burden of proof, in the body of the opinion in *In re Estate of Bayer*, 119 Neb. 191, 227 N. W. 928, we find this language (p. 192): "In this state the burden is upon the proponents of a will to prove, not only the execution of the will, but the capacity of the testator. In *Seebrock v. Fedawa*, 30 Neb. 424, it was said: 'It is the duty of the proponents in the first instance to offer sufficient testimony of the capacity of the testator to make out a *prima facie* case.' We are not prepared to say that, where the proponents prove the testator to have been capable of transacting ordinary business, he is required to go further in order to make a *prima facie* case of testamentary capacity. The proponents having established a *prima facie* case as to the testamentary capacity of the deceased, it is necessary, in order to defeat the will, that the contestants introduce sufficient evidence to overcome the presumption arising out of the *prima facie* case made by proponents. The burden of proof does not shift, but the burden of going ahead, as some authorities put it, does."

In the instant case, under the statement of law as made

in *In re Estate of Bayer, supra,* the proponent made a *prima facie* case as to the testamentary capacity of Josepha Wotke, that she was capable of transacting ordinary business.

At the time the will in question was made, Josepha Wotke was living in Columbus, Nebraska. Accompanied by her granddaughter, who lived with her, she went to the office of Becher, Hockenberger & Chambers in Columbus for the purpose of making a will. The will was dated March 7, 1918. In October, 1918, Josepha Wotke removed from Columbus to the home of her daughter and son-in-law in Boelus, Nebraska. After her death, the son-in-law, David Seifert, proponent, and John Seifert, her grandson, went to Columbus, contacted Fred B. Wotke, the contestant, and the three of them visited the office of Becher, Hockenberger & Chambers, and directed that the will of Josepha Wotke be sent to the courthouse in St. Paul, Nebraska. The evidence further discloses that Josepha Wotke transacted her own ordinary business affairs.

The will is simple and direct, conveys her intentions and disposes of $5,000 of personal property by giving to her daughter, with whom she lived, all of her estate after the payment of her just debts, with the exception of $10 to each of her two sons. There is no evidence on behalf of the contestant that in any way seeks to discredit the testimony of the proponent, or to the effect that Josepha Wotke was not of sound mind; or to the effect that she did not know the objects of her bounty or amount of her property; or to the effect that she was incapable of transacting ordinary business. In fact, her testamentary capacity is questioned only as a matter of law, and not by any evidence adduced on behalf of contestant.

The contestant further contends that the will in question is a forgery, on the theory that there is a difference in the spelling of the deceased's name in the will, which difference appears in none of her signatures which contestant or proponent is able to find, namely, that the signature in the will is spelled J-o-s-e-p-h-a; that the char-

acteristics in the writing of the person who signed the alleged will, according to the handwriting expert, differ from the characteristics of Josepha Wotke; and that there is an apparent erasure under the letter "a," the last letter of her first name. The evidence in this respect adduced by the contestant consisted of the testimony of a handwriting expert, who detailed the characteristics of the handwriting of Josepha Wotke, together with his reasons for declaring that, in his opinion, her signature to the will was a forgery. The proponent's explanation of the difference in spelling, as disclosed by the evidence, is that Josepha Wotke, when a girl, learned to write in the original German, using in her name the letters "pha;" that in later years, in lieu of the letters "ph" she used the letter "f" in writing her name. It is true that no handwriting of hers was produced to show this change in spelling. Therefore, the exhibits did express her signature as spelled J-o-s-e-f-a, while the signature to the will was spelled J-o-s-e-p-h-a. The deceased's daughter testified positively that the signature to the will was her mother's signature. One Jacob Louis, a bookkeeper and cashier of a bank, who had witnessed the signature of Josepha Wotke on several occasions, testified for the proponent that the signature in the will was the signature of Josepha Wotke. Later, in testifying for the contestant, he declared the signature to the will to be a forgery, corroborating, in this respect, the testimony of contestant's expert witness. The grandson of the deceased, who had seen her sign her name, testified that the signature in the will was that of the deceased. He based his testimony on the comparison of signatures on exhibits with the signature in the will.

Therefore, we have a situation where one expert witness testifies for the contestant; two witnesses, closely related to the deceased, testify for the proponent as to the genuineness of her signature in the will, and one witness subsequently changes his testimony. This presents a question of fact, in direct conflict, for the trial judge to determine. The testimony of experts is not conclusive, although the

authorities, as indicated by contestant, give it greater weight, ordinarily, than that of lay witnesses, but the court would not be bound to take such evidence as conclusive, as weighed against other evidence as to the signature of a testator to a will, and if, after a careful analysis of such evidence, the trial judge believes that the signature to a will is the signature of the deceased, then, unless he is clearly wrong in his analysis, the effect of his judgment in this respect is the same as that of a jury and it will not be disturbed.

The contestant questions the signatures of the attesting witnesses to the will and claims the same to be forgeries. The evidence in this respect discloses that Gus G. Becher testified positively that the signatures of the attesting witnesses, M. Brugger and H. F. J. Hockenberger, were genuine; that he knew them well in their lifetime; knew their handwriting and had seen it on many occasions because he was subsequently a member of the firm, taking the place of his father, since deceased. Likewise, Phil R. Hockenberger, a son of the attesting witness, H. F. J. Hockenberger, who was a member of the same firm for years and who had seen his father sign his name on numerous occasions, testified that the signature of his father in the will as attesting witness was genuine. In this evidence and in the testimony of the expert, called for the contestant, together with that of the witness Louis, wherein he testified first for the proponent as to the genuineness of Hockenberger's signature, and later for the contestant, stating that Hockenberger's signature was a forgery, we have a conflict in the testimony for the trial judge to determine. There seems to be no doubt as to the genuineness of the signature of M. Brugger as an attesting witness to the will.

"When a jury is waived and a law action is tried to the court, findings of fact have the same effect as findings of a jury. They will not be set aside unless clearly wrong." *Vohland v. Barron*, 126 Neb. 50, 252 N. W. 470. See *Elmcreek Ditch Co. v. St. John*, 127 Neb. 253, 255 N. W. 16; *Nelson v. Nelson, ante*, p. 458, 275 N. W. 829.

It is true that in situations, as arose in the cases of *In re Estate of O'Connor,* 101 Neb. 617, 164 N. W. 570, and *In re Estate of O'Connor,* 105 Neb. 88, 179 N. W. 401, naturally and necessarily greater credence would be given to the testimony of expert witnesses on handwriting than occurs in the instant case, for the reason that, in the *O'Connor* case and those of like nature, unknown claimants were seeking large amounts of money, basing their stories on fanciful situations which are not apparent in the instant case.

The judgment of the trial court admitting the will to probate is

AFFIRMED.