In RE ESTATE OF ADOLPH RENTER, DECEASED. FRANK RENTER ET AL., APPELLEES, v. RUDOLPH RENTER, APPELLANT.

29 N. W. 2d 466

Filed November 7, 1947.    No. 32279.

*Cook & Cook* and *Perry & Perry,* for appellant.

*Spear & Lamme,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and KROGER, District Judge.

SIMMONS, C. J.

This is an appeal from a judgment denying probate of a purported will. Proponent complains that there was a change of issues in the district court from those in the county court, and that the evidence is insufficient to sustain the verdict of the jury. We affirm the judgment of the trial court.

Proponent in his petition alleged that Adolph Renter died leaving a last will and testament which he offered for probate.

Contestants objected to the probate on these grounds:

"1. Said instrument is not executed in manner and form as required by law for the execution of a will.

"2. Said Adolph Renter at the time of the execution of said purported will was not of sound mind or possessed of testamentary capacity of reason of old age, senility, and mental weakness.

"3. Said alleged instrument was executed by Adolph Renter by reason of improper and undue influence exerted upon him by Rudolph Renter, who is the sole beneficiary thereunder, and those conspiring with him.

"4. That said alleged instrument was not executed on the date nor in the manner and form alleged in proponent's petition."

To these objections, proponent filed a general denial. Hearing was had resulting in a finding by the county court for the proponent and admitting the will to probate.

A transcript of the proceedings was filed in the district court. Thereafter the parties filed a written stipulation that the case be there tried upon the pleadings and issues that were filed and submitted in the county court. The contestants later filed a motion to amend

their objections by adding the following allegation: "5. That the signature on the alleged instrument ·is not the signature of Adolph Renter, deceased." The contestants stated in the motion that, although objections 1 and 4 were sufficient to permit proof of the issue, they made the motion to clarify the issues and to apprise proponent.

Proponent objected asserting a complete departure from the issues and the stipulation. The trial court overruled the objections and granted the motion. Proponent filed a motion to require the contestants to elect whether they would rely on the objection numbered 5, or rely on the grounds of contest set out and numbered 1 to 4, inclusive. The trial court, reasoning that objection numbered 3 admitted that Adolph Renter actually signed the instrument, required contestants to elect. Contestants excepted to the ruling and elected to rely on objection numbered 5. Proponent then denied this allegation. The cause was tried on the issue as to whether or not the signature to the instrument was that of Adolph Renter.

Proponent contends here that the trial court permitted a change of issues when it permitted the amendment. We see no merit in this contention.

Subject to exceptions not involved here, section 30-204, R. S. 1943, requires that a will be "* * * signed by the testator * * * and attested and subscribed in the presence of the testator by two or more competent witnesses; * * *." We have held that "* * * probate is proving the instrument purporting to be a will to have been signed by the testator in the presence of· at least two witnesses, who at his request signed the same as witnesses; and that the testator, at the time of the execution thereof, was of sound mind." Pettit v. Black, 13 Neb. 142, 12 N. W. 841; Walker v. Ehresman, 79 Neb. 775, 113 N. W. 218; Shevalier v. State, 85 Neb. 366, 123 N. W. 424. Accordingly, when the proponent offered the instrument for probate he that instant had the bur-

den placed upon him of proving the signature to be that of the alleged testator.

The burden is upon the proponent of a will, both in the county court and in the district court on appeal, to prove not only the execution of the will but the capacity of the testator. In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37. By their first objection to the probate contestants asserted that the instrument offered was not executed in manner and form as required by law.

We have approved this definition of "execute": " 'To complete, as a legal instrument; to perform what is required to give validity to, as by signing and perhaps sealing and delivering; as, to execute a deed, lease, mortgage, will,' " and " 'The act of signing, sealing, and delivering a legal instrument, or giving it the forms required to render it valid; * * *.' " Brown v. Westerfield, 47 Neb. 399, 66 N. W. 439. See, also, Hazelet v. Holt County, 51 Neb. 716, 71 N. W. 717. The term "execute" signifies those acts required of the testator. Lewis v. Lewis, 13 Barb. 17. See, also, Linton's Appeal, 104 Pa. 228; In re Burton's Will, 25 N. Y. S. 824; Heinbach v. Heinbach, 274 Mo. 301, 202 S. W. 1123; Fuller v. Sylvia, 240 Mass. 49, 133 N. E. 384.

Clearly, the act of signing is one of the elements constituting the execution of a will. When contestants presented the objection that the will was not executed in manner and form as required by law, they presented an objection which included the question of whether the signature on the instrument was that of the alleged testator. When they amended their objections and stated that the signature was not the signature of Adolph Renter, they were stating a ground of contest already presented. It necessarily follows that there was no change of issues and that proponent's contention is without merit.

Proponent next contends that the evidence is insufficient to sustain the jury's verdict, specifically con-

tending that the testimony of expert and nonexpert witnesses that the signature is not that of the testator is not sufficient to overcome the positive testimony of the attesting witnesses that the signature is genuine.

We summarize the evidence that went to the jury.

The testator was about 74 years of age when the writing was executed which is offered as his will. He had lived for many years on a farm near Dodge in Dodge County. He had a family of ten children, eight of whom are living. His wife died in 1923. During the latter years the proponent lived with him.

The writing was prepared by a lawyer at West Point in Cuming County. The attesting witnesses were the lawyer and his son who officed with him. West Point is about 18 miles from Dodge.

The lawyer testified that he had seen Renter on the street and had been told who he was. He had had no personal or business dealings with him prior to those here involved. There is evidence that the alleged testator did not drive a car, and that proponent ordinarily drove for him. The lawyer testified that Renter came into his office alone a week or so before the writing was prepared and discussed the making of a will. The lawyer told him he wanted to get the names of all his children. Renter said he would be back. On the day the writing was prepared, Renter came again to the lawyer's office alone. He had the names of the children written out. The lawyer did not know in whose handwriting these names were. There is evidence that Renter could only write his name. The lawyer and his son testified that Adolph Renter signed the instrument in their presence and that they signed as witnesses in his presence and in the presence of each other. The lawyer testified that he had an extensive probate business in Cuming County but did not draw many wills for people living in Dodge County.

The lawyer further testified that there was something wrong with Mr. Renter's eye, and that apparently he

could not see with one eye. The son testified that he noticed there was something wrong with one eye, and that Renter would "* * * kind of look to one side a little bit is all I noticed." There is other evidence that Renter lost the entire right eyeball when a child, and that in his later years he did not care for it properly and it was filled with offensive matter.

The lawyer testified that he had an idea he charged Renter five dollars for his services but that he could not find a book account of the item because he ran his miscellaneous small items together.

He further testified that the writing was placed in an envelope, sealed and left with the lawyer, where it remained until delivered in the sealed envelope to the county judge for probate.

The proponent was married in February 1943, and thereafter he and his wife lived in the home of Adolph Renter. The proponent testified that he knew nothing about his father having made a will until about two years before his father's death, which occurred October 9, 1945. This evidence leaves the instrument in the hands of an almost total stranger in a county where the alleged testator did not reside and without any showing of anyone but the testator knowing it was there for the first three years after the date of its purported execution.

After the death of Mr. Renter the children gathered in his home. All of the living children except one were there. The proponent's wife was there. Questions were asked about whether or not there was a will. There is evidence that the proponent was asked if there was a will on several occasions, and he said there was and then that there was not, and that finally his (proponent's) wife said, "* * * 'We know what is in our will but we don't know what is in yours.'" The proponent denied hearing his wife make this statement. We do not find any denial on her part. He testified that he told the others the day after the funeral that

there was a will in the lawyer's office at West Point, and asked them to go to the office with him. He testified that when he went there he saw a copy of the instrument but not the instrument itself, and that was his first knowledge of its contents.

Three nonexpert witnesses for the contestants testified that they had known Adolph Renter for many years, detailed their business dealings with him and the extent of their acquaintance with his signature. They testified that in their opinion the signature on the instrument was not the genuine signature of Adolph Renter. Two of the contestants testified likewise. The proponent testified that in his opinion it was his father's signature.

The contestants and the proponent each offered one expert witness. They compared the signature on the writing with established signatures of Adolph Renter. Each witness used enlarged photographs. Each witness detailed the reasons for his conclusion. For the contestants the one witness testified that in his opinion the disputed signature was not written by the same person who wrote the admitted signatures. For the proponent the one witness testified that in his opinion the disputed signature was written by same hand that wrote the admitted signatures.

The proponent offered a number of business men and officials of Cuming County who testified that the reputation of the lawyer and his son for honesty and fair dealing was good.

In the case of In re Estate of O'Connor, 105 Neb. 88, 179 N. W. 401, we held:

"Testimony of handwriting experts that a will offered for probate is a forgery, if based on sound reasons and circumstances supporting that theory, may be sufficient to overturn the testimony of subscribing witnesses that they saw the will executed."

"On the issue that a will offered for probate is a forgery, the testimony of subscribing witnesses that it was duly executed may be overthrown by any probative

proof, either direct or circumstantial, if admissible under the ordinary rules of evidence."

"After substantial evidence has been adduced in support of the plea that a will offered for probate is a forgery, there is no presumption that the persons purporting to be subscribing witnesses told the truth in testifying that they saw the will executed, though not directly impeached or directly contradicted."

"After contestants adduce credible proof that the will offered for probate is a forgery, it is error for the triers of fact to entertain the presumption that subscribing witnesses, in testifying that it was duly executed, told the truth merely because they were not directly impeached, but the issue must be determined from all evidential facts considered in their proper light in connection with the plea that the will is genuine and with the charge of forgery."

In the body of the opinion we said: "When an issue of forgery in a civil case is raised by pleadings and contested by evidence on both sides, there is no presumption either in favor of witnesses or in favor of circumstances. All of the evidential facts which throw light on the issue must be considered in connection with the allegation of proponents that the will is genuine and with the charge of contestants that the document offered for probate is a forgery. If the truth is found in oral testimony, it must determine the issue, but it is equally potent if found in circumstances." See, also, Bank of Commerce v. McCarty, 119 Neb. 795, 231 N. W. 34; Wert v. Equitable Life Assurance Society, 135 Neb. 654, 283 N. W. 506.

Tested by these rules we have no hesitancy in reaching the conclusion that the evidence is sufficient to sustain the verdict and that the proponent's assignment is without merit.

Proponent relies here largely upon three decisions, which we will mention briefly.

He relies upon the language used by the trial court in

Estate of Johnson, 170 Wis. 436, 175 N. W. 917, and which was adopted by the Supreme Court. The decision is not persuasive. In this state the rule is: " '* * * when the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong.' " Arman v. Structiform Engineering Co., 147 Neb. 658, 24 N. W. 2d 723. This rule was applied in the case of In re Estate of O'Connor, *supra.* The rule in Wisconsin appears to be that the court reviews the evidence and determines whether the trial court's findings are contrary to the clear preponderance of the credible evidence. Will of Miller, 201 Wis. 148, 229 N. W. 656. Clearly, in the case of Estate of Johnson, *supra,* the court weighed the testimony of the attesting witnesses as against that of the expert and came to the conclusion that it believed one and not the other. Otherwise, there is no occasion for the statement. Again in the case of Will of Miller, *supra,* the court did the same thing. Again in Estate of Hatten, 233 Wis. 199, 288 N. W. 278, the court weighed the testimony of an interested eyewitness against the testimony of an expert and said that the testimony of an expert was entitled to careful consideration but was not conclusive.

Proponent relies also upon Buttman v. Christy, 197 Iowa 661, 198 N. W. 314. In this case the only issue submitted to the jury was the question of the genuineness of a signature to a will. The subscribing witnesses testified to the genuineness of the signature. An expert testified that in his opinion it was not genuine. The court held that there was not a single extraneous fact or circumstance that in any degree tended to corroborate the expert witness in saying that the signature was not genuine. The court held that the testimony of the expert was admissible, and reversed and remanded the case, saying that "* * * unless upon a retrial additional evidence should be produced, it would be the duty of the court to direct a verdict for proponents." The inference proponent here draws from

the opinion is that the opinion evidence of the expert was not sufficient to take the case to the jury as against the evidence of those who testified they saw the signature placed on the instrument. The inference appears to be that which the successful party there had. The case was retried upon the issue of the genuineness of the signature. Additional testimony was introduced consisting of one expert and three nonexpert witnesses. The verdict again was in favor of the contestants. On appeal it was insisted that the previous holding was decisive and required a directed verdict for the proponents, and that the verdict was contrary to the evidence. The court held that the evidence was sufficient to require submission of the issue to the jury and that it could not assume to exercise the functions of a jury. The judgment was affirmed. Buttman v. Christy (Iowa), 208 N. W. 218. We call attention to the decision of the Supreme Court of Iowa in Keeney v. De La Gardee, 212 Iowa 45, 235 N. W. 745, for a discussion of an instruction such as is referred to in Buttman v. Christy, first above cited, also to Brien v. Davidson, 225 Iowa 595, 281 N. W. 150, 282 N. W. 480; and State v. Wickett, 230 Iowa 1182, 300 N. W. 268.

Proponent likewise cites Johnston v. Linder, 168 Iowa 441, 143 N. W. 410, and sets out a quotation found therein taken from Murphy v. Murphy, 146 Iowa 255, 125 N. W. 191, with reference to the value of expert and nonexpert evidence in this class of cases. The quote appears to have been made correctly. However, proponent overlooks the fact that the quotation is not complete. The sentence next following it in Murphy v. Murphy, *supra,* is this: "But its weight is for the jury."

The judgment of the trial court is affirmed.

AFFIRMED.