C. ELDRIDGE SCRIVEN, EXECUTOR OF THE ESTATE OF CLARENCE E. SCRIVEN, DECEASED, ET AL., APPELLEES, V. EVELYN SCRIVEN, APPELLANT, IMPLEADED WITH ANITA KENDALL ET AL., INTERVENERS AND APPELLANTS.

45 N. W. 2d 760

Filed January 26, 1951. Nos. 32865 and 32871.

*F. J. Reed,* for appellants.

*Mothersead, Wright & Simmons,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity instituted by C. Eldridge

Scriven in his own behalf and as executor of the estate of Clarence E. Scriven, deceased, plaintiff and appellee, against Evelyn Scriven, defendant and appellant, wherein the plaintiff seeks a declaratory judgment declaring him to be the sole owner of a bank account in the amount of $49,691.14 and also the sole owner of bills receivable from a business operated by Clarence E. Scriven in his lifetime but which was disposed of before his death. Other matters were presented for consideration and determination in the action but for convenience and for better understanding they will be dealt with separately and later herein. Anita Kendall and Jane Ellis, legatees under the will of Clarence E. Scriven, were interveners in the action. They are appellants here.

The trial court found and decreed $15,262.18 of the bank account belonged to the plaintiff and that the balance belonged to the estate. From the decree in this respect the defendant and the interveners have separately appealed, and the appeals have been consolidated by stipulation in this court.

The plaintiff is the son of the deceased, Clarence E. Scriven, and the executor of his will. The defendant is the widow. She is not the mother of the plaintiff. Plaintiff is a son of a former marriage. The interveners are not related to any of the parties but from early childhood they were brought up in the home of Clarence E. Scriven and the defendant.

Clarence E. Scriven died on November 10, 1947. On October 13, 1945, he opened a bank account in the First National Bank of Mitchell in the name of "Mr. or Mrs. C. E. Scriven." This was a checking account. The account was opened by the use of a regular deposit slip on the heading of which he wrote "Mr. or Mrs. C. E. Scriven." The amount of the deposit was entered on the slip. This slip with the deposit was delivered to an employee of the bank and the transaction duly entered on the records of the bank.

At this time the deceased was and for many years

theretofore had been the owner of a business known as the Mitchell Elevator. Prior to the opening of the "Mr. or Mrs. C. E. Scriven" account the deceased had an account in the First National Bank of Mitchell under the name of "Mitchell Elevator." All of his banking business of every kind was handled through this account. He and his wife drew at will against the account. After the opening of the "Mr. or Mrs. C. E. Scriven" account each drew at will against it also.

On June 16, 1947, the deceased sold the elevator business. On June 30, 1947, the "Mitchell Elevator" account, then containing $46,138.79, was by direction of the deceased closed by the bank and this amount credited to the "Mr. or Mrs. C. E. Scriven" account. Thereafter the deceased had no other account in any bank.

The sale of the buildings, the lease, the machinery, and equipment, except motor vehicles, of the Mitchell Elevator was evidenced by a written contract of sale. The consideration for the sale was $30,000, payable $6,000 cash and four promissory notes for $6,000 payable one, two, three, and four years after date respectively.

At the same time that the elevator property was sold deceased sold to the same purchaser the stock of merchandise on the property, the cash on hand, and one truck for a total purchase price of $9,321.93. This transaction except for the amount of $59.85 is evidenced by an inventory which appears in the record.

The basis of the determination of the trial court was the interpretation placed upon the will of the deceased which had been duly admitted to probate, the interpretation placed upon the "Mr. or Mrs. C. E. Scriven" bank account, and the application of the terms of the will to the sale of the Mitchell Elevator.

The will contains the following provision:

"THIRD: To my son, Clarence Eldridge Scriven, I give, devise and bequeath my Grain Elevator property in Mitchell, Nebraska, and the farm that I now own, situated in the State of Iowa, to be held by him and his

heirs forever, absolutely, in fee simple, provided, however, that in the event that during my lifetime I have sold or disposed of either one or both of these properties, then, and in that event, I hereby give and bequeath to my said son the proceeds from said sale in whatever form they may appear, if distinguishable, and if not, then a sum equal to the proceeds of said sales to the use of him and his heirs absolutely."

Under this provision of the will plaintiff contends that, among other things to be discussed later, he became entitled on account of the sale of the Mitchell Elevator to the four promissory notes of $6,000 each, $6,000 representing the payment to the deceased in cash, and $9,321.93, representing the amount received for the property and money described in the inventory, the last two amounts amounting to $15,321.93. The decree gave him $15,262.18. There is obviously an error in the computation and an inadvertent failure to include the item of $59.85. On the theory adopted by the trial court the amount should have been $15,321.93.

The parties do not contend that plaintiff is not entitled to the four notes. The reason for the allowance of the $15,262.18 out of this bank account rather than out of the estate generally does not appear. We assume however that it was on the theory that the proceeds of the sale went into the account therefore this amount must come out of it.

The defendant contends that nothing could come either to plaintiff or to the estate from the bank account for the reason that it was a joint account within the meaning of law and therefore upon the death of Clarence E. Scriven it became her sole and absolute property. By the decree the court found otherwise. It found that the account belonged to Clarence E. Scriven and that on his death it became a part of his estate, hence the judgment that all of the account except $15,262.18 belonged to the estate.

The propriety of the disposition made of the bank

account therefore depends upon whether or not within the meaning of law it was joint. If it was joint then under our statutes and the interpretations and applications of them by this court the account after the death of Clarence E. Scriven became the property of the defendant.

Section 8-167, R. S. 1943, provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business."

In the case of In re Estate of Johnson, 116 Neb. 686, 218 N. W. 739, this court said: "Section 8046, Comp. St. 1922 (section 8-167, R. S. 1943), relating to the payment by a bank of deposits entered as payable to any one of two or more persons named therein, not only is intended for the protection of the bank, but also fixed the property right of the persons named, unless the contrary appears from the terms of the deposit."

It was also said: "A deposit of money in a bank by a husband and made payable to himself or wife, whether expressly as joint tenants with survivorship or not, is presumed to have been made by the husband with a donative intent and for the benefit of the wife with the intention of giving to her, if she survives, the complete title to the funds."

These propositions were approved in Kehl v. Omaha Nat. Bank, 126 Neb. 695, 254 N. W. 397; First Trust Co. v. Hammond, 140 Neb. 330, 299 N. W. 496; McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599; Young v. McCoy, 152 Neb. 138, 40 N. W. 2d 540.

It is substantially urged by the plaintiff that the method and formality of the original opening of the account and the methods and customs of making deposits thereafter defeat the contention of the defendant that

this was or was intended to be a joint account within the meaning of the statute.

The first deposit slip was made out by Clarence E. Scriven in manner and form as indicated. Numerous deposits were made to the account thereafter. Some were headed as was the first one and some were headed "C. E. Scriven" but all were deposited in the one account which was clearly in accord with his intention. This is evidenced by the fact that he received the monthly statements which apparently he carefully examined. There is no evidence of dissatisfaction on his part. He appears never to have requested that any deposits be made other than in the "Mr. or Mrs. C. E. Scriven" account.

As to the formality this was, under the authorities, sufficient to indicate that the account was and that it was intended to be regarded as joint. The case of In re Estate of Johnson, *supra,* related to accounts represented by deposit certificates. Some of these were payable "to the order of self or Margaret E. Johnson." The case of McConnell v. McCook Nat. Bank, *supra,* related to one certificate of deposit, "Payable to the order of self or Mrs. C. T. Rader and Ernest Fowler."

As to each of these two situations it was held that the wording used was sufficient for the creation of a joint account within the meaning of the statute. There is no substantial difference between the controlling wording of the deposits in these two cases and the controlling wording in the case at bar.

It follows therefore that it must be held that the account in question was joint with right of survivorship in the defendant.

It is pointed out in In re Estate of Johnson, *supra,* that in a proper action a bank deposit coming to a party through right of survivorship may be determined to be held in trust for another. This appears to be a sound principle but it has no application here. The action here is in equity to determine the true status of the account. There is no contention that it is a trust fund. On the one

side it is contended that it is in part the property of the plaintiff by reason of a provision of a will and in part an asset of the estate of Clarence E. Scriven, deceased. On the other it is contended that it is the absolute property of the defendant.

We conclude therefore that the decree to the extent that it gives to the plaintiff and the estate the bank deposit is in error and that to that extent it should be reversed and the deposit decreed to be the property of the defendant.

The next question to be considered is what the deceased intended that plaintiff should take in case of the sale of the "elevator property." As already pointed out the parties agree that he is entitled to the four promissory notes and an amount equal to the $6,000 which was received in cash when the sale was made. The plaintiff contends that he is entitled to receive in addition $9,321.93, the amount represented by inventory, and certain other items of indebtedness which he insists represent a part of the "elevator property" and which the appellants insist were debts owing to the deceased in consequence of which they are assets of the estate.

This court held substantially in In re Estate of Zents, 148 Neb. 104, 26 N. W. 2d 793, a case wherein in a will the term "business" was employed, that it included what is ordinarily considered the business together with the merchandise on hand and the accumulated bank account. Bills receivable were not mentioned but from the context of the opinion it is apparent that if there had been they also would have been regarded as part of the business.

The provision of the will here employs the term "property" instead of "business." In Wood v. Security Mutual Life Ins. Co., 112 Neb. 66, 198 N. W. 573, 34 A. L. R. 712, in definition of property it was said: "A calling, business, or profession, chosen and followed, is property, and the term 'propery,' as ordinarily employed, includes every interest any one may have in anything

that is the subject of ownership, together with the right to freely possess, use, enjoy and dispose of it."

It appears from a reading of the will itself and an application thereto of the pronouncments of these two cases that when the deceased employed the term "elevator property" he intended the "elevator business" at the time it was sold. This would include the physical structures, the leasehold, the merchandise on hand for use and being used in the transaction of the business, the outside equipment used in pursuit of the business, and the cash on hand which was considered as a part of the sale.

Under this conclusion then the plaintiff is entitled on the record to receive in addition to what it is conceded that he is entitled the amount of $9,321.93.

The plaintiff contends that in addition to this he is entitled to receive an additional $9,742.63. His theory in this connection is that the term "elevator property" as used in the will should be construed to include accounts receivable at the time of sale and that he is entitled to the equivalent of the accounts receivable at that time.

In this connection the plaintiff testified that he was able to trace collections on accounts receivable in the amount of $9,742.63 into the "Mr. or Mrs. C. E. Scriven" account. This represents the additional amount to which he lays claim.

The determination here depends upon the intention of the testator at the time he made the will (Hill v. Hill, 90 Neb. 43, 132 N. W. 738, 38 L. R. A. N. S. 198), and in determining the intention of the testator it is the duty of the court to examine the will and give to it the true intent of the testator as expressed in the will. Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11; In re Estate of Schuette, 138 Neb. 568, 293 N. W. 421; In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704; Salmons v. Salmons, 142 Neb. 66, 5 N. W. 2d 123; In re Estate of Zents, *supra*.

In this instance it may well be said that the language of the will leaves the intent of the testator somewhat obscure. He used the term "elevator property" and there is nothing else in the will throwing light on his intent or meaning.

The record however discloses that for a considerable period of time before the sale and after until the "Mitchell Elevator" account was closed and the "Mr. or Mrs. C. E. Scriven" account was opened, Clarence E. Scriven carried therein not only the moneys coming from the elevator business but also all other moneys coming from his various activities outside the elevator business, and the record fails to disclose that the moneys coming into the account from the various sources had any segregation or separate identification after reaching the account. He drew upon the account apparently without regard to its source or sources as well as did the defendant herein. After the account was closed the same practice was followed with regard to the "Mr. or Mrs. C. E. Scriven" account.

Under the authorities cited it is clear that the intent of the testator must be ascertained from the will itself. However we think it not improper, under the rule that parol evidence (extrinsic documentary in part here) is inadmissible to determine the intent of a testator as expressed in his will, unless there is a latent ambiguity therein which makes his intention obscure or uncertain (Lincoln Nat. Bank & Trust Co. v. Grainger, *supra*), to consider what was included in the sale of the "elevator property" at the time the sale was made as bearing on the question of intent.

In this connection plaintiff offered in evidence exhibit 13 which was received. This exhibit is a contract which contemplates the sale of the "elevator property" described in the will. The property described in the contract was the following: "The buildings located on Chicago, Burlington & Quincy R. R. Co., Lease No. REW-823 in Mitchell, Nebraska, commonly known as

the Mitchell Elevator. The same consisting of the elevator building, the warehouses, the machinery and equipment therein contained, including the scales, feed grinders, elevator apparatus and steam roll barley plant. The intention being to include in said lease all property of every kind, nature and description used in connection with said Mitchell Elevator, save and except the motor vehicles."

No one contends that Clarence E. Scriven contemplated by the use of the words in the contract "all property of every kind, nature and description used in connection with said Mitchell Elevator" that there should be a conveyance of the accounts receivable to the purchaser. If any such contention were made it would be conclusively negatived by the fact that these accounts were not turned over as part of the property sold. This coupled with his long time practice of handling his bank accounts and collections appears to refute the contention that the testator by the use of the term "elevator property" in his will intended to include accounts receivable in the event of sale of the property.

It is concluded from this that at the time the will was drawn Clarence E. Scriven regarded the money as it came in on accounts receivable became his property and from that point on was no part of the "elevator property." This being true the plaintiff is not entitled to anything received on accounts receivable collected after the sale as part of the elevator property.

As has been pointed out Clarence E. Scriven bequeathed the Mitchell Elevator property to the plaintiff, and if that was sold the proceeds if distinguishable, and if the proceeds are not distinguishable then a sum equal to the proceeds. By another provision of the will he provided bequests of $25,000 to each of the interveners.

The interveners appear to agree that the bequest to plaintiff without sale was special and comes ahead of theirs and also in the event of sale it remains special to the extent that the proceeds are distinguishable, but to

the extent that they are not the bequest is general and has equal priority with but not ahead of their bequests. The plaintiff contends that his bequest is specific in any event with priority ahead of that of the interveners. This issue though presented to the district court was left undetermined.

The contention of the plaintiff must be sustained. It was clearly the intent of the testator that this was a specific bequest of particular property or its equivalent to be received ahead of the distribution of the general assets of his estate. He clearly did not intend its abatement in whole or in part as a specific legacy. See, In re Estate of Bush, 89 Neb. 334, 131 N. W. 602; In re Estate of Hunter, 132 Neb. 454, 272 N. W. 318; In re Estate of Lewis, 148 Neb. 592, 28 N. W. 2d 427.

The appellants contend that the plaintiff is not entitled to participate in the disposition of his father's estate for the reason he contested the will which contains a provision barring participation in the distribution by any beneficiary who should contest the will.

The contention is without merit. There was never in any true sense, at least insofar as this record discloses, a contest of the will.

The testator made a will the authenticity of which was never questioned. Later he made some changes in and modifications of this will and with the changes and modifications he purportedly re-executed and re-published it. By answer to the petition for probate of the will as changed and modified plaintiff questioned the legal efficacy of the reformed instrument as a valid will. This answer and the adjudication thereon by the county court furnish the only information before this court as regards the so-called contest. There was no issue before the county court other or different than that which must be determined in advance of the admission of any will to probate pursuant to statute. §§ 30-204 and 30-220, R. R. S. 1943. Under the statute the burden is on the proponent of a will to prove the

elements constituting the execution of the will. In re Estate of Wotke, 133 Neb. 739, 277 N. W. 45; In re Estate of Renter, 148 Neb. 776, 29 N. W. 2d 466. The answer of the plaintiff herein to the petition for probate imposed no burden other or different from the one imposed by the statute as a condition precedent to admission of the will to probate.

The remaining question requiring consideration herein is the matter of taxation of costs in the district court. The court taxed the costs to the defendant. In view of the conclusions arrived at here it appears that the costs should be taxed to the plaintiff, except the costs of the interveners which should be taxed to them.

It is therefore the conclusion of this court that the deposit of $49,691.14 in the First National Bank of Mitchell, Nebraska, in the account designated "Mr. or Mrs. C. E. Scriven" became and is the property of the defendant Evelyn Scriven by right of survivorship.

It is the further conclusion of the court that the plaintiff is entitled to have confirmed in him as his absolute property the four notes for $6,000 each or the proceeds thereof which were received in part payment for the "elevator property"; also that he is entitled to receive out of the estate of Clarence E. Scriven, deceased, $6,000 representing cash payment made at the time of the sale; and also that he is entitled to receive out of the estate $9,321.93, this being the amount of money received pursuant to the inventory of property and money which was transferred as a part of the "elevator property," and $59.85 for stock of merchandise which was not included in the inventory.

It is the further conclusion that the notes or the proceeds thereof together with the $6,000 and the $9,321.93 represent a specific bequest payable out of the estate with priority over general bequests and particularly with priority over the bequests to the interveners.

It is the further conclusion that the costs in the dis-

trict court should be taxed to the plaintiff except the costs of the interveners which should be taxed to them.

The decree of the district court is therefore affirmed in part and reversed in part, and remanded with directions to the district court to enter decree in accordance with the conclusions set forth herein.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.

I do not concur with the interpretation of the words "elevator property" which the majority opinion announces. There being nothing within the four corners of the will from which the intent of the testator can be found, the usual and customary meaning should be given to the words used. To me the term means the building and the lease of the grounds upon which it is situated, together with the machinery and equipment in the building or on the premises which are essential to the operation of an elevator. An elevator property is not synonymous with an elevator business as the majority opinion infers. An elevator business is that which occupies the time, attention, and labor of a person for livelihood or profit in using an elevator property for the purposes for which it was constructed. In a conveyance of an elevator business as distinguished from an elevator property the inventory of grain and feeds, book accounts, and cash in the bank might well be included. I cannot agree, however, that all property used in connection with an elevator business is included in a devise of the "elevator property" only, or that its usual meaning in the business world would sustain any such definition. By the use of the term "elevator property" in the devise the testator never intended to include the additional property used in connection with the operation of the elevator as a business.

WENKE, J., concurs in this dissent.