775 F.2d 250
 28 Ed. Law Rep. 64
 Chukwuemeka V. IKPEAZU, Appellant,
v.
The UNIVERSITY OF NEBRASKA, a public corporation; Albert R.
Haskell; Janet Clouse; Mark Engel; Bruce Clayton; Samuel
D. Shillcutt; James Wilson; Jeannette Haggerty Hadsall;
Richard Gourley; Warren Naducci and Sherry Jenkins, all
individuals, Appellees.
 No. 85-1090.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 9, 1985.
Decided Oct. 17, 1985.
Rehearing Denied Nov. 26, 1985.
 
 James L. Rold, Omaha, Neb., for appellant.
 Kathleen A. Jaudzemis, Lincoln, Neb., for appellees.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 After receiving an academic dismissal from the University of Nebraska College of Pharmacy (University or College), Chukwuemeka V. Ikpeazu brought suit against the University, his instructors, grade appeals committee chairmen, and administrators. In his complaint he alleged that they had violated his rights to substantive and procedural due process and equal protection under 42 U.S.C. Sec. 1983, conspired to violate these rights under 42 U.S.C. Sec. 1985, and that two administrators had failed to prevent the conspiracy under 42 U.S.C. Sec. 1986. Before instructing the jury the district court[1] dismissed the due process claims and a count making general due process and equal protection allegations against defendants Warren Narducci and Sherry Jenkins. As to the remaining counts, the jury returned a verdict in favor of the defendants. Ikpeazu appeals arguing that the district court erred in dismissing his procedural and substantive due process claims, and that the jury verdict is against the weight of the evidence. We affirm.
 
 
 2
 Ikpeazu is a native of Nigeria. He began studying for a doctorate in pharmacy at the University in July, 1977. The first part of his training consisted of lecture or didactic classes, and four junior clerkships. He received passing grades in all of these courses. Next, he was required to complete eight senior clerkships. These are generally four weeks in length and require the student to spend forty hours per week outside the classroom under the supervision of a faculty advisor.
 
 
 3
 Appellant began receiving failing grades in some of his senior clerkships when in November, 1977 he failed what is called an "ambulatory clerkship." He appealed this grade to the grade appeals committee of the College, but after a hearing the committee affirmed the grade. Ikpeazu then participated in a psychiatric pharmacy clerkship. He failed this clerkship also, but did not appeal the grade.
 
 
 4
 In May of 1980 he retook the psychiatric pharmacy clerkship under a different instructor, and received an "F." This grade was upheld by the grade appeals committee. Ikpeazu appealed this decision to defendant Haskell, the dean of the College, who changed the grade to withdraw-passing.
 
 
 5
 In July of 1980 Ikpeazu retook the ambulatory clerkship. Again, he failed the clerkship, but did not appeal the grade. The College of Pharmacy has a rule of automatic suspension when a student receives more than two failing grades in required courses. However, because he was entitled to appeal, Ikpeazu was allowed to remain in school, and in August, 1980 he retook the psychiatric pharmacy clerkship for the third time. He failed this clerkship and appealed the grade. At the hearing he was assisted by the Minority Affairs Officer of the University. The committee upheld the failing grade.
 
 
 6
 At this point Ikpeazu was suspended from the College. He appealed this action to the Executive Committee of the College and requested readmission. A hearing was held at which appellant was represented by counsel. The committee upheld the dismissal and he was not allowed to reapply to the College.
 
 
 7
 Appellant first raises a substantive due process issue arguing that defendant instructors gave him the failing grades in an arbitrary and capricious manner without rational basis. Ikpeazu alleges that the clinic grading was done in a subjective manner, students were treated differently by the instructors, and that grades varied according to who was the instructor. The district court, relying on Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and Hines v. Rinker, 667 F.2d 699 (8th Cir.1981), found that these allegations did not state a cause of action.
 
 
 8
 Relevant to consideration of Ikpeazu's substantive due process claim is the question whether his dismissal deprived him of a protected interest in property. Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972). It is now axiomatic that property interests are not created by the federal Constitution, but are created and "defined by existing rules or understandings that stem from an independent source such as state law...." Id. at 577, 92 S.Ct. at 2709. Such "rules or understandings" may arise by statutory or common law, and may be found in the terms of an express or implied contract. See Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972). A protected property interest may attach to any such understanding that, in substance, gives rise to "an individual entitlement which cannot be removed except 'for cause.' " Logan v. Zimmerman Brush Co., 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).
 
 
 9
 In somewhat comparable circumstances we have observed that the relationship between a university and a student is ordinarily contractual in nature, and that the terms of that contract may be implied from a student handbook or other statements of academic policy. Corso v. Creighton University, 731 F.2d 529 (8th Cir.1984). Here, the University of Nebraska promulgated a publication setting forth a grievance procedure for student appeals of allegedly capricious or improper grades. This procedure does appear to imply a contractual expectation in students that they will not be graded capriciously, and thus to create a cognizable property right in nonarbitrary grading. That the publication only sets forth a procedure for appealing a grade, and not an express promise that grading shall not be arbitrary, arguably should not alter our conclusion. " 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." Cleveland Board of Education v. Loudermill, --- U.S. ----, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).
 
 
 10
 Ikpeazu, in asserting a property interest relies in large part upon Nebraska state cases, Scriven v. Scriven, 153 Neb. 655, 45 N.W.2d 760, 765 (1951), and Wood v. Security Mutual Life Ins. Co., 112 Neb. 66, 198 N.W. 573, 575 (1924), which define "[a] calling, business or profession, chosen and followed" as property. Scriven, 45 N.W.2d at 765. He would have us apply the rationale of those cases to pursuit of an academic degree. However, we find it unnecessary here authoritatively to undertake determination of the federal constitutional significance of the Nebraska decisions, or indeed other than as obiter dictum of the full constitutional significance of Ikpeazu's contract rights as a student hereinabove discussed.
 
 
 11
 Although for present purposes, we may tend to agree with plaintiff that he may assert a protected property interest in the grades he received from the instructor defendants, we cannot agree that he was deprived of that interest when he received failing grades and was subsequently dismissed. An actionable deprivation in an academic dismissal case is proved only if there was no rational basis for the university's decision, or if the decision was motivated by bad faith or ill will unrelated to academic performance. Hines, 667 F.2d at 703; (citing Greenhill v. Bailey, 519 F.2d 5, 10 n. 12 (8th Cir.1975)); Gaspar v. Bruton, 513 F.2d 843, 851 (10th Cir.1975); see also Horowitz, 435 U.S. at 91, 98 S.Ct. at 955.
 
 
 12
 In reviewing the record we accord due respect for the discretion of the faculty members, those best qualified to make such judgments, Hines, 667 F.2d at 704. This we do in light of the "significant and historically supported interest of the school in preserving its present framework for academic evaluations...." Horowitz, 435 U.S. at 86 n. 3, 98 S.Ct. at 953 n. 3.
 
 
 13
 Ikpeazu's instructors presented substantial testimony detailing the reasons for failing the appellant in two of his clinical clerkship courses. The record indicates that he made errors of observation, analysis and labelling in both courses which could have had serious medical consequences had he performed them without supervision. Moreover, instructors in each of the crucial courses, and the dean of students, all appeared to have made good faith, repeated attempts to help the appellant through his academic difficulties. His grades were reviewed on several occasions through the grade appeal process without alteration. Given plaintiff's apparently serious, if sporadic, problems with these clerkships, and the direction and considered review afforded him by the faculty, we must hold that his grades and subsequent dismissal from the program were not arbitrary as a matter of law.
 
 
 14
 Relatedly and particularly in connection with his claim of denial of procedural due process, appellant argues that the grade appeal committee members were not impartial decision makers. Ikpeazu complains that the members were handpicked by defendant Haskell, committee votes split along racial lines (a black student on one of the committees did not vote in favor of upholding appellant's failing grade), and one of the committees did not conduct a thorough investigation of one of the grades. Ikpeazu also complains that the committees' procedures were insufficient, in that the hearings were informal, and he was not allowed to be present during the testimony of others.[2]
 
 
 15
 These contentions merit little additional discussion.
 
 
 16
 The procedures provided appellant were more than adequate in light of the need for flexibility, and the less stringent procedural requirements in academic situations. Horowitz, 435 U.S. at 86, 98 S.Ct. at 953; Miller v. Hamline University School of Law, 601 F.2d 970, 972 (8th Cir.1979). The determination of a student's grade requires "expert evaluation of cumulative evidence and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." Horowitz, 435 U.S. at 90, 98 S.Ct. at 955.
 
 
 17
 With respect to the claim of bias, we observe that the committee members are entitled to a presumption of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven. Hortonville Joint School District No. 1 v. Hortonville Education Assn., 426 U.S. 482, 497, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1 (1976); Welch v. Barham, 635 F.2d 1322, 1326 (8th Cir.1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981). The allegations Ikpeazu makes in support of his bias claim are generally insufficient to show the kind of actual bias from which we could conclude that the committee members acted unlawfully.
 
 
 18
 Moreover, the case must be considered in light of the evidence submitted to the jury on the issue of bias and in light of appellant's argument that the jury's finding of no racial discrimination is against the weight of the evidence. Ikpeazu points out that he received better grades from non-department instructors than from those within the department, that some other Black Africans also experienced difficulties in the College, that one instructor destroyed tests and gave preferential treatment to other students, and that the testimony was conflicting.
 
 
 19
 While Ikpeazu's allegations and evidence may point to a degree of subjectivity on the part of some of the instructors, and the difficulties of some African students, these arguments are insufficient to allow us to conclude that the jury's verdict could only have been otherwise or that appellant may prevail here.
 
 
 20
 As indicated, there was ample evidence of appellant's academic shortcomings, such as misprescribing drugs and giving incorrect dosages, from which the jury could determine that Ikpeazu's dismissal had a sound academic basis, and at best, from appellant's viewpoint the evidence of bias was meager.
 
 
 21
 In reviewing the jury verdict, we may not substitute our view of the facts for the jury's, unless "reasonable minds viewing the evidence in the light most favorable to the prevailing party, could only have found otherwise than the trier of fact." McIntyre v. Everest & Jennings, Inc., 575 F.2d 155, 158 (8th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978); see Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 857, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606 (1982); Brown v. Missouri Pacific Railroad, 703 F.2d 1050 (8th Cir.1983).
 
 
 22
 Any alleged conflict in the testimony is best resolved by the jury and does not provide a rationale for overturning the verdict. United States v. Robinson, 756 F.2d 56, 58 (8th Cir.1985); Graham v. Solem, 728 F.2d 1533, 1541 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984); United States v. Snider, 720 F.2d 985, 993 (8th Cir.1983), cert. denied, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984).
 
 
 23
 From what has been said, it follows that the judgments entered upon the opinion of the experienced district judge and the amply supported jury verdict should be, and they are, affirmed.
 
 
 
 [1]
 The Honorable Albert G. Schatz, United States District Judge, District of Nebraska, now deceased
 
 
 [2]
 Ikpeazu also argues that he was denied due process when defendant Haskell unilaterally changed his grade in the psychiatric clerkship from "F" to withdraw-passing. It was not injurious for the dean to go beyond the school's procedural guidelines in an attempt to aid appellant. See Horowitz, 435 U.S. at 92 n. 8, 98 S.Ct. at 956 n. 8. We are at a loss to understand why Ikpeazu complains of this treatment