HUGO F. KRUEGER, ALSO KNOWN AS HUGO KRUEGER, APPELLANT, v. MYRTLE KRUEGER ET AL., APPELLEES.

98 N. W. 2d 360

Filed October 9, 1959. No. 34606.

*Hutton & Hutton,* for appellant.

*H. M. Nicholson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought in the district court for Cuming County by Hugo F. Krueger, also known as Hugo Krueger, plaintiff, against Myrtle Krueger, Flora Pestel, Alvin Pestel, husband of Flora Pestel, and all persons claiming any interest in or to certain tracts of land, defendants, the purpose of the action being to quiet title to certain land described in the petition in the plaintiff. The trial court rendered judgment which quieted title in the plaintiff to a 40-acre tract of land to which the defendants and cross-petitioners, Myrtle Krueger and Flora Pestel disclaimed any interest; quieted title in the cross-petitioners, Myrtle Krueger and Flora Pestel, to 80 acres of land to which said cross-petitioners claimed title; and rendered judgment against the plaintiff in favor of the defendants and cross-petitioners Myrtle Krueger and Flora Pestel in the amount of $800 for rent of the premises of which plaintiff was in possession and farming. The plaintiff filed a motion for new trial which was overruled, and plaintiff appealed.

For convenience we will refer to the plaintiff as Hugo Krueger; to the defendants and cross-petitioners as Myrtle Krueger and Flora Pestel; and to the father of the plaintiff and defendants as F. A. Krueger.

The land here involved is all in Cuming County. Consequently we will not repeat the description in detail.

The petition alleged that on January 13, 1919, F. A. Krueger became the owner of the southwest quarter of the northwest quarter, the northwest quarter of the northwest quarter, and the northeast quarter of the northwest quarter of Section 32, Township 23 North, Range 4 East of the 6th P. M., and the southeast quarter

of the northwest quarter of said section; that on June 25, 1932, F. A. Krueger executed and delivered to Hugo Krueger a deed which was filed of record August 15, 1932, conveying to him the northeast quarter of the northwest quarter, and the southeast quarter of the northwest quarter of Section 32; that F. A. Krueger made and executed a will on March 2, 1949, which provided in part: "3. I give and devise the north half of the north half of the northwest quarter of section 32, * * * to my daughter, Myrtle Krueger. 4. I give and devise the south half of the north half of the Northwest quarter of section 32, * * * to my daughter, Flora Pestel. 6. All the rest, residue, and remainder of my estate I give, devise, and bequeath to my son, Hugo Krueger," thereby purportedly devising the entire north half of the northwest quarter of Section 32; that however, F. A. Krueger at the time of his death had not been the owner of the east half of the northwest quarter of Section 32 since 1932, therefore, the attempted devise of the northeast quarter of the northwest quarter of Section 32 was a nullity, but the record was clouded with said attempted devise; that said cloud should be removed by the quieting of title in the plaintiff; that the deed records of Cuming County reflect that on the date of the death of F. A. Krueger, he was the owner of the west half of the northwest quarter of Section 32; that on August 1, 1957, two deeds were filed of record in Cuming County, purportedly passing the title to the west half of the northwest quarter of said section, or 80 acres, as follows: The east half of the west half of the northwest quarter of Section 32 to Flora Pestel, and the west half of the west half of the northwest quarter of Section 32 to Myrtle Krueger; that said deeds were executed by F. A. Krueger on December 15, 1937, in the presence of Otto F. Paege, and were at that time delivered to Paege for safekeeping in the Citizen's National Bank at Wisner, Nebraska, solely for F. A. Krueger who retained full control over said deeds which were never delivered

by the grantor to the purported grantees, Myrtle Krueger and Flora Pestel; and that said deeds therefore are not valid, but their existence on the record casts a cloud on the record which should be removed. The petition further alleged that the last will and testament of F. A. Krueger, which was probated in the county court of Cuming County, had full validity, force, and effect as to all of the real estate owned by F. A. Krueger at the time of his death. The prayer of the petition was that the title to said premises be quieted and confirmed in the following persons: The north half of the northwest quarter of the northwest quarter of Section 32, in Myrtle Krueger; the south half of the northwest quarter of the northwest quarter of Section 32, in Flora Pestel; and the northeast quarter of the northwest quarter, and the southwest quarter of the northwest quarter of Section 32, in Hugo Krueger.

The answer and cross-petition of the defendants Myrtle Krueger and Flora Pestel alleged that on and prior to December 15, 1937, F. A. Krueger was seized in fee simple of the west half of the northwest quarter of Section 32; that on said day he made, executed, and acknowledged two warranty deeds conveying the east half of the west half of said northwest quarter to Flora Pestel, his daughter, and the west half of the said west half of the northwest quarter to his daughter Myrtle Krueger; that he delivered said deeds to the Citizens National Bank of Wisner with oral instructions to deliver the same after his death to the grantees named therein; that F. A. Krueger intended at such time to part with all power to repossess said deeds, and intended the deeds to operate as a present conveyance, reserving to himself a life estate in the premises; that the deeds were so held by the bank, and, after the death of F. A. Krueger, were delivered to the cross-petitioners; and that by virtue thereof each cross-petitioner became seized of the premises described in the deed made to her. The cross-petitioners further alleged that their father in-

tended by his will to devise them the same land which he had theretofore conveyed to them, which was the land owned latest in point of time; and that the descriptions of the land in the will as to the north half of the northwest quarter were intended to mean the west half of the northwest quarter. The prayer was that cross-petitioners be decreed to be the owners of the west half of the northwest quarter in divided shares as fixed by the deeds made to them.

The plaintiff's answer and reply to the defendants' cross-petition specifically denied delivery of the deeds to the property here involved to any of the defendants and cross-petitioners, and that anyone but the plaintiff had any interest in the northeast quarter of the quarter section here involved; specifically alleged that the will of F. A. Krueger, deceased, was executed after the execution of the deeds in question and that said will disposed of the real estate of the deceased as he intended; and generally denied the cause of action set forth in defendants' cross-petition. For reply it denied all allegations of the cross-petition not admitted, and renewed the prayer of the petition.

The record discloses by stipulation that Frank A. Krueger, usually known as F. A. Krueger, died on January 28, 1957. His wife, Emerette Krueger, died on July 13, 1933. Frank A. Krueger and Emerette Krueger were the parents of four children, Hugo F. Krueger, Myrtle Krueger, Flora Pestel, and Esther Kind who is not a party to this suit. Prior to June 25, 1932, F. A. Krueger was the owner of the east half of the northwest quarter of Section 32. On the said day he and his wife jointly conveyed said premises to Hugo Krueger for a consideration of one dollar, free and clear of mortgage encumbrance. Prior to June 25, 1932, Emerette Krueger was the owner of the southwest quarter of the northeast quarter of Section 32. On the same day, her husband joining, she conveyed said premises to Hugo Krueger for a recited consideration of one dollar, free and clear

of mortgage encumbrance. Prior to December 15, 1937, F. A. Krueger was the owner of the southwest quarter of Section 29, Township 23, Range 4 in Cuming County. On said day he conveyed these premises to Fred A. Kind, his son-in-law and the husband of Esther Kind, for a recited consideration of five dollars, subject to a mortgage encumbrance. The grantee also covenanted in the conveyance to pay $2,000 to Myrtle Krueger in yearly installments of $100. Prior to December 15, 1937, F. A. Krueger was the owner of the west half of the northwest quarter of Section 32, which was free of mortgage encumbrance. Immediately prior to December 15, 1937, the lands described above were the only lands owned by F. A. Krueger, and thereafter, during his lifetime, he acquired ownership of no other lands.

Otto F. Paege testified that he had been a resident of Wisner, Nebraska, for 37 years, and was the cashier of the Citizens National Bank; that he had known F. A. Krueger all his life; and that he remembered when F. A. Krueger came into the bank, by himself, to have the deeds prepared. These deeds, one a warranty deed to Myrtle Krueger and the other a warranty deed to Flora Pestel, are in evidence. This witness prepared the deeds during banking hours. After the deeds were prepared, F. A. Krueger told this witness to give the deeds to the proper persons designated therein, after his death. The deeds were to be kept in the bank, and were put in envelopes and placed in the general files of the bank. The deeds remained there until after F. A. Krueger's death. This witness had not thought of the deeds for a number of years, and when the thought came to him, he located the deeds in the general files of the bank, held them for some time, and then delivered them in person by handing one of the deeds to Myrtle Krueger and the other to Flora Pestel who took the deeds out of the bank.

On cross-examination this witness testified that he did not deliver these deeds until July 1957; and that

between the time of the death of F. A. Krueger and the time the deeds were delivered they were in his possession as executor of the estate of F. A. Krueger, deceased, who died on January 28, 1957. He further testified that he located the deeds in the middle of February 1957.

A deposition of this witness was taken on March 31, 1958. We might sum up this part of the record as being to the effect that this witness gave contradictory statements as to whether or not the grantor of the deeds in question gave instructions to him to have the deeds delivered, or that the grantor could have the deeds at any time he desired. The grantor never at any time after the deeds were made, executed, and placed in the files of the bank, made any demand to have the deeds delivered to him. In fact, nothing was ever said about the deeds after the transaction had in the bank with this witness. Nothing was ever said by this witness to Krueger about the deeds during the time the same were in the bank. This witness did testify that he would have turned the deeds over to F. A. Krueger on Krueger's demand, but afterwards he said he would not have turned them over to Krueger if Krueger demanded them, on the theory that the bank could be involved in litigation if he turned the deeds over to Krueger upon demand.

The land in question was leased to Hugo Krueger who farmed it, with F. A. Krueger receiving rentals as designated in the lease. Hugo Krueger testified that he farmed the land in 1957 and 1958; and that he made no accounting for rent on the south 40 acres of which he had been in possession, that is, the south half of this 80 acres of land.

Elmer Matthies testified that he was a cousin of F. A. Krueger. He lived in Krueger's home during 3 months of the winter of 1930, and lived with the Pestels from 1933, off and on, until 1954. He further testified that F. A. Krueger was at the Pestels' home from 1940 until 1948, when he went to live with his son Hugo

Krueger, and lived there until he died. This witness was living with the Pestels at the time F. A. Krueger went to live with Hugo Krueger. He further testified that he was familiar with the 80 acres of land here involved, 40 acres of which is in controversy; that he had conversations with F. A. Krueger about this land on occasions when they were staying in the same place; and that when they would drive around and look at the crops Krueger would talk about the land. He remembered one occasion in particular in the summer of 1948 when he and Krueger were in the house alone and Krueger told him the 80 acres of land belonged to his two daughters, that he had made deeds to them. He did not say where the deeds were, but said that he was using the land for his income as long as he lived and that he had given all of his property away and divided it up where it should go. This witness further testified that he knew that 120 acres had been deeded to Hugo Krueger, which left F. A. Krueger only 80 acres of land; that F. A. Krueger told this witness that each of his daughters was getting 40 acres; and that the deeds were made to the daughters in 1937. On cross-examination this witness testified that F. A. Krueger did not say in what manner each daughter was getting 40 acres of land.

Fred Kind, a brother-in-law of the plaintiff, testified that he had been the owner of 160 acres of land since 1937. This land is north of the 80 acres in controversy. He further testified that the deed made to him was made on the same day that the deeds were made to the daughters of F. A. Krueger; and that the reasonable rental value of the land in question, being farmed by Hugo Krueger, for the years 1957 and 1958, would be $10 per acre.

It was stipulated that F. A. Krueger, during his lifetime, collected the rents, made repairs, and paid the taxes on the 80 acres of land in controversy, and retained control over the same.

The plaintiff assigns as error that the trial court erred in holding that there was a delivery of the deeds to the grantees and cross-petitioners; and that the trial court erred in not finding that the last will and testament of the deceased passed title to the land described therein to Hugo Krueger as provided for in the residuary clause of the will.

While the question of the delivery of the deeds is raised in this litigation, we conclude that it is not necessary to determine this issue in arriving at our decision in this case for reasons hereinafter stated.

Certain paragraphs of the last will and testament of F. A. Krueger, deceased, appear in the petition of the plaintiff and are referred to in the answer and cross-petition of the defendants. The will is not made a part of the record. The rule is as follows: Statements, admissions, and allegations in pleadings upon which the case is tried are always in evidence for all the purposes of trial; they are before the court, and may be used for any legitimate purpose. See, Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173.

A party may at any and all times invoke the language of his opponent's pleading, on which a case is being tried, on a particular issue, as rendering certain facts indisputable; and in doing this he is neither required nor allowed to offer such pleading in evidence in the ordinary manner. See, Bonacci v. Cerra, *supra;* Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298; Kuhlmann v. Platte Valley Irr. Dist., 166 Neb. 493, 89 N. W. 2d 768.

This is a trial de novo in this court.

The final decree in the matter of the estate of F. A. Krueger, deceased, in the county court of Cuming County, Nebraska, in part, reads as follows: "That by his last will and testament the testator devised the north half of the north west quarter of section 32, township 23, range 4, in Cuming County, Nebraska. That at the

time of the execution of said instrument and at the time of his death the testator was the owner of the west half of said north west quarter, and did not own the north east quarter of the north west quarter of said section 32, which is a part of the tract devised by him. That since the death of the testator there have been placed of record deeds from him conveying said west half of the north west quarter. That because this Court lacks jurisdiction over title to land the meaning and effect of the transactions above described cannot be determined in this proceeding." It was decreed by the county court: "* * * that any real property of which the testator died seized be assigned in accordance with the terms of his last will and testament; * * *."

The plaintiff, Hugo Krueger, claims that as residuary devisee he is the owner of the southwest quarter of the northwest quarter, and ownership of this 40 acres is a question presented in this case.

It is obvious that a latent ambiguity exists in the will of F. A. Krueger, deceased. It is also apparent that he wanted to devise to his daughters Myrtle Krueger and Flora Pestel 40 acres of land each. It seems clear that the testator intended to describe the land he owned when he made and executed his will, and not the land belonging to someone else.

We deem the following authorities to be applicable to the instant case.

"In construing a will the whole thereof will be considered and from its four corners the court will determine the intent of the testator and give effect thereto, and extrinsic evidence is not admissible to determine the intent of the testator as expressed in his will unless there is a latent ambiguity." Borah v. Lincoln Hospital Assn., 153 Neb. 846, 46 N. W. 2d 166.

In Seebrock v. Fedawa, 33 Neb. 413, 50 N. W. 270, 29 Am. S. R. 488, a testator devised Lots 4 and 9 and the west half of Lot 10, in Block 32, in the city of Lincoln. He was not the owner of Lot 4, but did own Lots 3,

9, and the west half of Lot 10, and those were all the lots possessed by him in that block. It was held that Lot 3 passed by the will. The court said: "While it is true that oral evidence cannot be admitted to change the language of a written instrument, and particularly of a will, yet the universal rule at the present time is to admit oral proof to show that one term was used for another, or that an essential term, to make the definition perfect, was omitted or erroneously stated. For the purpose of arriving at the intention of the testator, therefore, the will is to be read in the light of the surrounding circumstances. Thus, suppose a party should devise the manor of B., and it should appear that the testator possessed two manors—one known as East B., and the other as West B.—parol evidence is admissible to explain the ambiguity by showing the testator's intention."

In the case of St. James Orphan Asylum v. Shelby, 75 Neb. 591, 106 N. W. 604, it was held that the original jurisdiction of the district court over an action to quiet the title to real estate is not affected by the fact that incident thereto there is involved the construction of a will; and that parol evidence is admissible to explain a latent ambiguity in a will, where such evidence is necessary to enable the court to ascertain the intention of the testator. This case used the same language relating to parol evidence to explain a latent ambiguity in a will as was used in Seebrock v. Fedawa, *supra*.

In Heywood v. Heywood, 92 Neb. 72, 137 N. W. 984, the court said: "In discussing the matter of ambiguity the Indiana court said: 'Whenever, therefore, in applying a will to the objects or subjects therein referred to, extrinsic facts appear which produce or develop a latent ambiguity, not apparent upon the face of the will itself, since the ambiguity is disclosed by the introduction of extrinsic facts, the court may inquire into every other material extrinsic fact or circumstance to which the will certainly refers, as well as to the relation occupied

by the testator to those facts, to the end that a correct interpretation of the language actually employed by the testator in his will be arrived at.' In stating affirmatively the purpose for which extrinsic evidence may be admitted, the court say it is 'to connect the instrument with the extrinsic facts therein referred to, and to place the court, as nearly as may be, in the situation occupied by the testator, so that his intention may be determined from the language of the instrument, as it is explained by the extrinsic facts and circumstances. Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328, 336, and cases cited.' " See, also, Borah v. Lincoln Hospital Assn., *supra.*

In 57 Am. Jur., Wills, § 1077, p. 695, it is said: "Where the description of the real property devised in a will is inaccurate, or there is a latent ambiguity with respect thereto, extrinsic evidence is competent to resolve the ambiguity and identify the property designated." Under note 16 numerous cases are cited, including Seebrock v. Fedawa, *supra,* and Pemberton v. Perrin, 94 Neb. 718, 144 N. W. 164, Ann. Cas. 1915B 68. While the case of Wallace v. Sheldon, 56 Neb. 55, 76 N. W. 418, overruled Seebrock v. Fedawa, *supra,* it was on a ground other than the rule heretofore expressed. See, also, Annotation, 94 A. L. R. 131. To cite other authorities holding as above stated would unnecessarily lengthen this opinion.

While the judgment of the district court did not show upon what ground it arrived at its judgment, the rule is that a judgment rendered by the district court which is free from error is not rendered invalid by the fact that the court gave an incorrect reason therefor. See A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687, and cases cited therein.

For the reasons given herein, the judgment of the district court is affirmed.

AFFIRMED.